### HINMAN v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY.

Railroad: LIABILITY FOR STOCK KILLED: STATUTE CONSTRUED. A railroad company is liable under section 6, chapter 169, laws of 9th general assembly, for stock killed upon its track that have escaped there from the inclosure of their owner, through which the road runs, by reason of the company failing to maintain a sufficient fence along its road at that point. When thus on the track of the company's road they are held to be "running at large" within the meaning of the statute.

*Appeal from General Term, Eighth District (Johnson County).*

TUESDAY, APRIL 12.

THIS is an action to recover, under chapter 169 of the act of the 9th general assembly, double the value of certain sheep killed by trains upon defendant's road, which runs through the farm of plaintiff in Johnson county. Trial to the court without a jury. Judgment was rendered by the District Court in favor of plaintiff for $228, being twice the value of the sheep. This judgment was affirmed in the General Term upon defendant's appeal. From the judgment of the General Term it now appeals to this court.

*Edmonds & Ransom* for the appellant.

*Clark & Haddock* for the appellee.

BECK, J. — The only question presented in the argument of defendant's counsel for our determination involves a construction of chapter 169 of the acts of the 9th general assembly. So much of that chapter as is material to the consideration of the question is in the following words:

"SEC. 3. Where any railroad runs through any improved or fenced land, said railroad company shall make proper cattle-guards on such roads when they enter or leave such improved or fenced land.

"SEC. 4. At any or all points where any railroad crosses any public highway, the company owning said railroad shall, without unnecessary delay, construct good, sufficient and safe crossings.

"SEC. 5. Any railroad company neglecting or refusing to comply with the provisions of sections three and four of this act, shall be liable for all damage sustained by any one by reason of such neglect and refusal; and, in order for the injured party to recover, it shall only be necessary for him to prove such neglect or refusal.

"SEC. 6. Any railroad company hereafter running or operating its road in this State, and failing to fence such road on either or both sides thereof against live stock running at large, at all points where said roads have the right to fence, shall be absolutely liable to the owner of any live stock injured, killed or destroyed, by reason of the want of such fence or fences as aforesaid, for the value of the property so injured, killed or destroyed, unless the injury complained of is occasioned by the willful act of the owner or his agent, and, in the cases contemplated by this section, in order to recover, it shall only be necessary for the owner of the property to prove the injury or destruction complained of: *Provided*, that in case the railroad company, liable under the provisions of this section, shall neglect or refuse to pay the value of any

property so injured or destroyed, after thirty days' notice in writing given, accompanied by an affidavit of the injury or destruction of said property, to any officer of the company, or any station or ticket agent employed in the management of its business in the county where the injury complained of shall have been committed, such company shall, in an action brought to recover therefor, be held liable to pay double the value of the property injured, killed or destroyed as aforesaid."

The question to be considered arises upon the words occurring in section 6, viz. : "live stock *running at large*," and requires us to determine whether the sheep of plaintiff, killed by the train of defendant, were such stock as were, in contemplation of the statute, "running at large."

Among other findings of the court are the following:

" 3. The sheep were kept in an inclosed field on plaintiff's farm in said county (Johnson), and when killed had escaped through the fence along defendant's track, and owing to defective condition of said fence along the track.

" 4. That defendant built a sufficient fence along said track about twelve years since, and repaired the same in the year 1867, before the injuries complained of, but, owing to fires which had burned said fence, it was insufficient to keep sheep from said track at the time of the injuries complained of."

The point made by defendant's counsel is this: Section 6 contemplates that double damages shall only be assessed against railroad corporations for killing stock, which are running out of an inclosure upon the uninclosed commons, prairies or wooded land, and not such as are kept within an inclosure. The words " running at large," it is insisted, are used to describe stock so running out, and such being their import in all other cases where they occur in our statutes, that meaning must be given

them here. Therefore, when stock are kept in an inclosure, through which a railroad passes, the owner cannot recover, under section 6, when they are killed, even if the road be not fenced. In such a case, the corporation is only liable for negligence, which must be shown by the plaintiff. We are unable to concur in this view.

In our opinion, the words "running at large," as used in the section above named, import that the stock are not under the control of the owner; that they are not confined by inclosures to a certain field or place, nor under the immediate care of a shepherd or herdsman; that they are left to roam wherever they may go. Now, if they are left in an inclosure which is *insufficient* to restrain them, they are evidently "running at large," for they are not under the control of the owner. If placed in such an inclosure and they escape from it, and go upon the track of an unfenced railroad, they will be considered as "running at large." In case the owner of stock, through negligence, permits his fence to fall down, so that they escape, the rule is not different, for, as the owner may permit his stock to run at large — out of his inclosure — the fact that they are running at large through his negligence cannot affect his rights. They are "free commoners," and may go wherever they are not restrained by a lawful fence, and, of course, upon the land covered by the right of way or track of a railroad corporation. It follows, that if the stock escape through the negligence of another, the owner's rights would remain unchanged. This certainly would be so if the escape were through the negligence of the servants of the railroad corporation, against which damages for their destruction is sought to be recovered.

In the case before us the defendant had the right to fence the land covered by its right of way where the destruction of plaintiff's sheep occurred. It had, in fact, years before, exercised that right. Through its negligence

the fence had become insufficient, and the sheep, for that reason, escaped from the inclosure and from the control of the owner. They were, therefore, when on the track of defendant's road, and when killed, "running at large."

Defendant's counsel contend that the defendant was not required to fence its road through the field of plaintiff. The argument in support of this position is based upon section 3 of the act above quoted, and is as follows: That section requires all railroad companies, where their roads pass through fenced land, to make proper cattle-guards upon the line of the fences. These cattle-guards are made for the purpose of preventing stock from entering the inclosure; it thus appearing that the statute does not contemplate the fencing of the road. And, as it is not expressly provided in the statute that the company shall fence its road through such inclosures, it follows, that, under this satute, it incurs no liability in omitting so to do.

The complete answer to this argument is found in the following view: The requirement for the erection of cattle-guards is not alone for the protection of the inclosure from stock running at large. The necessity for such guards is just as great if the road is fenced through the inclosure as though it were not. If it is fenced, and there are no cattle-guards, stock running upon the commons or prairies, if found upon the roadway so fenced, would be exposed to greater danger of destruction than they would be upon a common over which an unfenced railroad passes. It in fact would be a kind of a trap into which stock would be invited for almost certain destruction. There is no positive requirement that railroad companies shall fence their roads within inclosures, nor is there such requirement where the roads pass over uninclosed land. The statute simply provides, that, in the absence of fences, negligence shall be presumed. This,

it was thought, would be a sufficient incentive to cause the companies to protect the tracks of their roads by the erection of sufficient fences. And, as the companies have the right to fence where their roads pass through inclosed land, and as the necessity for fencing, both for the safety of stock running within such inclosures and for the protection of trains against accidents imperiling the safety of passengers, which may be caused by running over horses or cattle, exists as well within as without the bounds of a farm, it seems clear that the spirit as well as the letter of the act applies to roads passing through inclosures.

Defendant's counsel insist that the words "running at large," when used elsewhere in our statutes, have the import which they maintain should be given to them here, and have thereby acquired a settled meaning which the law will require us to recognize. Without controverting counsel's view as to the meaning which these words elsewhere bear, we are of the opinion that they have not acquired such settled meaning as will require us to disregard the light we may derive for their interpretation from the consideration of the reason and spirit of the statute and the application of other rules of construction.

It is urged, that as the record discloses the fact that defendant's road was fenced through plaintiff's farm, it cannot be held liable, unless negligence in keeping the fences in repair be shown; that if the fences were thrown down and destroyed, without fault of defendant, and, before they could be repaired or replaced by the exercise of proper dilligence, the sheep of plaintiff escaped from the field and went upon the railroad and were thus killed, defendant ought not to be held liable in this action. It is not necessary to determine the question thus raised. The record contains evidence of the existence of no such state of facts. From the finding of the court above set

out it appears that the fence was insufficient to keep *sheep* off of the railroad; that it had been injured by fire; and that the killing of the sheep was by more than one train and must have occured at different times. These facts clearly appear by the evidence, which is given in full in the bill of exceptions. The state of facts upon which the position of defendant's counsel is based certainly does not appear in the record. We cannot presume its existence.

It is our opinion that the judgment of the District Court should not be disturbed.

Affirmed.