VALLEAU v. THE CHICAGO, MILWAUKEE & ST. PAUL R'Y COMPANY.

1. **Railroads**: KILLING STEER ON TRACK: "RUNNING AT LARGE." Action to recover double damages for a steer killed on the track by defendant's train. The steer was one of a herd of 80. The herd had been in charge of a boy, who, a short time before the accident, left them for a time; and another boy, after a time, but yet before the accident, took charge of them, and drove them across the track. He supposed he had them all, but the one in question had been left behind. *Held* that it was running at large, within the meaning of § 1289 of the Code, under which the action was brought.

2. ———: ———: DOUBLE DAMAGES: CONFLICT BETWEEN SWORN STATEMENT AND PETITION. The fact that the owner of a steer killed by a train on a railroad track states its value at $60, in the notice and affidavit served on the railroad company under § 1289 of the Code, and in his petition, filed after 30 days, he states its value at $40, does not, in the absence of allegations and proof of a fraudulent intent, prevent him from recovering double damages; especially where it appears that the statement was made by an agent, but that the petition was sworn to by plaintiff himself.

*Appeal from O'Brien District Court*—Hon. Scott M. Ladd, Judge.

## Wednesday, March 7.

Action to recover double the value of a steer killed by a train on defendant's road, which was not fenced at the place where the accident occurred, although the right to fence existed. Trial by jury, and verdict for the plaintiff for $80, and judgment. The defendant appeals.

*Geo. E. Clarke*, for appellant.

*Milt. H. Allen*, for appellee.

Seevers, Ch. J.—I. The amount in controversy, as shown by the pleadings, being less than $100, we are required to answer certain questions certified by the trial judge, among which are the following: "*Second.* Is a steer running at large, in the meaning of section 1289 of the Code of Iowa, when the facts established by the evidence show that the steer in question was in the possession of one Murphy for the purpose of herding for the plaintiff; that during the day of the accident one of Murphy's boys had been herding the said steer with other cattle; that a short time prior to the accident he had left the cattle, and returned to his father's house about a half a mile distant; that just previous to the accident another son of said Murphy had gone for the cattle to drive them to the house of said Murphy; that the cattle were on the south side of defendant's railroad track; that said last boy drove the cattle across said track hurriedly; that when about thirty or forty feet north of said track he first noticed the steer in controversy drinking at a point about thirty or forty feet south of said track; that he had not been driving said steer; that the boy supposed he had driven all the cattle across the track, and that he did not know that this steer remained on the other side until he had crossed the track and looked back;

*Marginal note:* 1. RAILROADS: killing steer on track: "running at large."

that when driving the cattle across the track he was using his best efforts to get them across before the approach of the train of defendant? *Third.* The number of cattle mentioned in the facts stated in number two being eighty." In *Hinman v. Chicago, R. I. & P. R'y Co.*, 28 Iowa, 491, it is said that the words " running at large," as used in the statute, " import that the stock are not under the control of the owner; that they are not confined by inclosures to a certain field or place, nor under the immediate care of a shepherd or herdsman; that they are left to roam wherever they may go;" and in *Smith v. Kansas City, St. J. & C. B. R'y Co.*, 58 Iowa, 622, it was held that a sucking colt, the dam of the colt being under the control of the owner, was running at large, although ordinarily it might be expected to follow its dam. In the case at bar it does not appear how long the herdsman in charge of the cattle had left them before another person took charge of them. As error must affirmatively appear, it can be fairly said that the cattle were in charge of no person for at least some indefinite period of time. During such time they were running at large, and the steer in question had strayed some distance from the herd, when a person took charge of the cattle, except the one in question, which he did not know had separated from the rest of the cattle. The steer in question was not in the " immediate " charge of a herdsman, but was running at large, as provided in the statute. The foregoing question must be answered in the affirmative.

II. We are also asked the following question: " Where a party seeks to hold the railroad company for double damages for failure to pay the value of the animal killed or injured, under section 1289 of the Code, after the expiration of the thirty-days notice therein provided, can he hold the company liable for such double damages where he elects to fix the value of the animal killed at sixty dollars in said notice and affidavit, and after the thirty days files his sworn petition alleging the

2. —: —; double damages: conflict between sworn statement and petition.

value of said animal to be forty dollars?" A copy of the affidavit is attached to and made a part of the petition, and the record shows that the defendant pleaded only a general denial of the allegations of the petition. The mere fact that a greater amount is claimed in the notice than in the petition should not prevent a recovery, unless it was claimed in bad faith or for some fraudulent purpose, and this we understand to be the contention of counsel for the appellant. For he states in his argument: "If we can satisfy your honors that on the face of the record this affidavit was served in bad faith, then certainly we are entitled to a negative answer to the question certified." The evidence is not before us, but it does appear that the affidavit was verified by an agent of the plaintiff, and the petition by the latter. Therefore there may have been an honest difference of opinion as to the value of the steer. But, be this as it may, we cannot say, as a matter of law, that the claim was made in bad faith because an amount greater than that stated in the petition was claimed therein. If the defendant conceived that the claim was made in bad faith, such fact should have been pleaded and issue joined thereon, and the same submitted to the jury. As the question is presented to us, it must be answered in the affirmative, and the judgment                    AFFIRMED.