[Filed May 19, 1890.]

# E. J. KEENEY, RESPONDENT, v. THE OREGON RAIL-WAY & NAVIGATION COMPANY, APPELLANT.

STOCK RUNNING AT LARGE.—Stock running at large are animals that roam and feed at will, and are such as are not under the immediate direction and control of any one; and in such case if they wander upon the track of a railroad, and are killed, the owner in allowing them to run at large is not guilty of contributory negligence and precluded from a recovery.

STOCK IN CHARGE OF A HERDER—CONTRIBUTORY NEGLIGENCE.—Stock in charge of a herder and subject to his control is not stock running at large, as the places whither they wander and feed, or lie down to rest, are selected by him and subject to his direction and control; and if he voluntarily drives and leaves them uncared for in a place of danger along a railroad track where injury is likely to happen to them as a probable consequence, and they are killed, his act will be regarded as the proximate cause of the injury and preclude the owner from recovery.

APPEAL from Gilliam county: J. H. BIRD, judge.

This is an action to recover damages for the killing of certain sheep by the defendant railroad, and is based on the statute. The answer, after denying the facts alleged, sets up a further and separate defense to the effect that the killing of said sheep was caused by the negligence of one George Taylor, and without any fault or negligence in the operation of the train, etc. Issue being joined, a trial was had and a verdict and judgment were rendered for the plaintiff, from which this appeal is taken.

*W. W. Cotton*, for Appellant.

*Bennett & Wilson*, for Respondent.

LORD, J., delivered the opinion of the court.

There is but one question that we deem it necessary to consider upon this record, namely, whether the evidence was sufficient to sustain the verdict. It arises out of the defendant's motion for a non-suit. The testimony of the plaintiff, as disclosed by the record, shows that one George Taylor was tending and in charge of the sheep when killed; that the night before the killing of them occurred he drove them across the railroad track and down to the river to water them; that he sometimes watered them there, but not often, and had brought them there that

evening; that the railroad at that place, where the sheep were run over, is between four and five hundred yards from the river; that he left this band of sheep, composed of twenty-six hundred, on this space between the railroad and the river to rest that night, and repaired to his cabin for that purpose himself; that in the morning he drove the sheep to water and then went back to his cabin and begun cutting some wood, when he saw his sheep crossing the railroad track, and that about one-half of them was across, but they were strung out on the track; that he could see down the track for two miles, and looked to see if there was a train, but saw none, and went to get his horse, and then heard the train coming, but that it was not very close, but he went to get the sheep off the track; that the train whistled when about one hundred and fifty yards from the sheep and kept whistling and rung the bell, and that the sheep in their fright bunched when they were struck, etc.

Taking this evidence as true, is it sufficient to sustain the verdict, or did the court err in not granting the motion for non-suit. The contention of counsel for the defendant is, that from this evidence it clearly appears that it was the negligence of Taylor which occasioned the collision and caused the destruction of the sheep. It has been held in this State that the common law rule that every man is bound to keep his stock within his own enclosure does not prevail, and that a party in allowing his stock to run at large, which strays upon a railroad track and is killed, is not guilty of contributory negligence. *Moses* v. *S. P. R. R. Co.*, 18 Or. 385. And it is also provided under the statute under which this action is brought that the allowing of stock to run at large upon common unfenced range, or upon enclosed land owned or in the possession of the owner of such stock, shall not be deemed or held to be contributory negligence. Hill's Code, § 4048. Stock running at large are animals that roam and feed at will, and are not under the immediate direction and control of any one. They may be in an enclosure which may restrain the limits

in which they shall wander and feed; or they may be on an unfenced range, relatively without limit, where they may roam and feed at will; but in either case they are not subject to the direction and control of any one. So to speak, they are master of their own movements, going whither they will without personal direction or control. In such cases, if they wander upon the track of a railroad and are killed, the owner in allowing them to run at large is not guilty of contributory negligence, and precluded from a recovery. But stock or sheep in charge of a herder and subject to his control, whether in an enclosed field or upon a range, is not stock running at large, as the places whither they wander and feed, or lie down to rest, are selected by him and subject to his direction and control. So that, if he voluntarily drives or leaves them in a place of danger, and where injury is likely to happen to them, along a railroad track, and they are killed, his act will be regarded as the proximate cause of the injury, and preclude the owner from recovery. In such case, the stock is not to be deemed running at large within the meaning of the statute so as to exclude the defense of contributory negligence.

Now, it appears that on the night previous to the killing of the sheep that the herder had driven them down to water on the river and left them all night on a narrow space or strip of land between the river and the line of the railroad; that it was only "sometimes" that he watered them at this place, but that he did it on this occasion, and when that was done he repaired to his cabin some distance away and remained for the night, leaving twenty-six hundred sheep hemmed in this narrow space along the track of the railroad, liable to be used at all hours of the night and day as the requirements of its business might demand, and with their feeding grounds on the other side of it. The sheep were thus voluntarily placed and left in a place of danger, and where, under the circumstances, injury to them would likely occur as a natural and probable consequence. As luck would have it, nothing occurred during

the night to cause the sheep to leave the place in which they had been left, either arising from some external circumstances, or from the promptings of animal instinct. In the morning, after watering them, he again left them in this space between the river and the track of the railroad and went back to his cabin. The feeding grounds of the sheep were on the other side of the track, which they must cross to reach, and the direction their instinct would now lead them occurred, as was a plain consequence easily to be foreseen. When next he saw the sheep they were crossing the track, about one-half of them across it, and the other half strung out along the track. As no train was in sight and he could see two miles down the track, he went to get his horse, and then heard the train coming, and then went back to get the sheep off the track, and in the meantime the engineer began to sound the alarm, whistle, and ring the bell, and the sheep becoming frightened or panic-stricken, bunched, and the collision occurred, which caused the loss or destruction of the sheep alleged. The place where the sheep were turned loose and left uncared for, by the herder, under the circumstances, was a place where danger is known to exist and injury to them was a probable consequence.

In *Moses* v. *Southern Pacific Railroad Co.*, *supra*, it was said: "An owner cannot turn loose his stock regardless of circumstances, or at a place where danger to them is constant and imminent; and when an injury occurs to them as a consequence of his conduct, though the defendant may not have been free from fault, escape the charge of negligence, or a want of ordinary care. * * * In such case the act itself is equivalent to deliberately putting the stock into a place of danger, and where injury to them is a probable consequence. The stock do not stray into a place of danger but they are turned loose in a place where danger is known to exist, or may be foreseen by the exercise of

ordinary care, and the party cannot and ought not to recover for injuries which are the direct result of his own negligence." The sheep did not stray from the range to the place where they were, but they were deliberately put where they were by the voluntary act of the herder; and there turned loose or left to roam at will at a place where danger is known to exist and injury likely to happen to them as a probable consequence of such an act. Nor is this all. The liability to loss of life and property, arising from such an act, to others, is incomparable to the damage to such animals, and is an important consideration not to be overlooked. The accident as it did actually occur illustrates the danger. It might have been a passenger train and thrown its cars from the track and endangered or destroyed the lives of its passengers. As the court said in *Smith* v. *Railroad Co.*, 34 Iowa, 508, "the owner of cattle may not turn them out and enable them to frequent a place of great peril on a railroad track, or its depot grounds, and then demand that the company shall stop its trains and drive off his cattle, or slacken the speed, or change the time table in order to deliver his cattle from the peril into which he has voluntarily placed them." We think, therefore, the act of the herder in putting the sheep on the narrow strip where he left them uncared for, and injury was likely to happen to them, under the circumstances, as a probable consequence, indicated such a want of ordinary care on his part as contributed to produce the injury of which the plaintiff complains, and precludes his recovery.

It follows that the judgment must be reversed with the direction to the trial court to sustain the motion for non-suit.