Argued December 31, 1913, decided January 6, 1914.

## BALL *v.* CROISAN.*

(137 Pac. 225.)

### Animals—Trespass—Failure to Fence.

Sections 5762, 5763, L. O. L., require all fields and inclosures to be inclosed with a lawful fence, and prescribe the requisites of such a fence. Section 5575 provides that, on vote by a county and notice published by the county clerk, it shall be unlawful for stock to run at large, under penalty collectible in a civil action in the name of the state. Section 5765 defines the liability of the owner of any horse, cattle or stock breaking into an inclosure inclosed by a lawful fence. *Held*, that the owner of premises not inclosed by a lawful fence is not entitled to recover for trespass thereon by stock of another, though the county has voted and given the notice as prescribed by Section 5575.

[As to liability of owners of stock permitted to range on unfenced land, see note in 81 Am. St. Rep. 446.]

---

*On the question of the lack of division fence as affecting liability for damages by trespassing cattle, see note in 22 L. R. A. 60.

REPORTER.

From Marion: PERCY R. KELLY, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is an action by Wm. Ball and Palmyre Ball against E. M. Croisan.

The plaintiffs allege in substance that they are the owners of certain lands in Marion County, Oregon, whereon is a growing peach orchard inclosed by a sufficient fence; that, notwithstanding the electors of that county, at the general election of 1910, had voted against stock running at large therein, and the county clerk had given notice of that decision of the electorate, the defendant had subsequently allowed his goats to escape from his adjacent premises; and that they had destroyed many peach trees belonging to plaintiffs to their damage in the sum of $1,000.

The answer admits the title of the plaintiffs to the lands and orchard, but denies that it was inclosed by a sufficient, or any, fence. The defendant also confesses to the ownership of the goats, but denies that they escaped from his premises, or injured the plaintiffs' orchard. The complaint is otherwise wholly traversed. From a verdict and judgment for plaintiffs, the defendant appeals. REVERSED.

For appellant there was a brief, with oral arguments by *Mr. John H. McNary* and *Mr. Woodson T. Slater.*

For respondents there was a brief over the names of *Messrs. Carson & Brown* and *Mr. George G. Bingham,* with oral arguments by *Mr. John A. Carson* and *Mr. Bingham.*

MR. JUSTICE BURNETT delivered the opinion of the court.

As the sole ground for reversing the judgment against him, the defendant contends that the court erred in giving to the jury the following instruction:

"It is also a proposition of law by which you should be guided * * that, where livestock is trespassing upon premises, if it goes over such premises, or such property, whereon it is originally trespassing, and does damage to other property which it goes upon, it is not a defense to say such other property was not inclosed by a lawful fence, for the person who permits his stock to trespass where it does not rightfully belong cannot be heard to say that the damage caused by such stock was caused by reason of the failure to inclose the premises upon which it goes from the place of its original trespass, or by reason of a defective inclosure of the premises."

There was testimony tending to show that the fence inclosing the orchard was defective to such an extent that the goats could go through it, and that it was not what is defined to be a lawful fence within the meaning of Sections 5762 and 5763, L. O. L. The first of these sections provides that "all fields and inclosures shall be inclosed with a fence sufficiently close, composed of posts and rails, posts and palings, posts and poles, posts and planks, palisades, or rails alone, laid up in the manner commonly called a 'woven' fence or turf, with a ditch on either side, or wall of rock or stone four and a half feet high." And the latter states that "all such fences composed of posts and rails, posts and palings, posts and poles, posts and planks, or palisades, shall be at least four and a half feet high; those composed of turf shall be at least four feet high, with trenches on either side at least three feet wide at the top and three feet deep; and what is commonly called a 'woven' fence shall be at least five feet high to the top of the rider; if not ridered, shall be five feet to the top rail, and the corners shall be locked with strong rails, poles, or stakes."

As amended by the act of February 21, 1911 (Laws 1911, p. 210), Section 5575, L. O. L., declares in substance that if, at an election held for that purpose, a majority of all the votes is cast against stock running at large, the county clerk shall give notice by publication in some newspaper to the effect that in 60 days from the date of the notice it shall be unlawful for stock to run at large under penalty of $10 for the first offense, and $20 for each subsequent offense, to be recovered from the owner of the stock in a civil action in the name of the state, for the benefit of the common school fund. Constables and road supervisors are specially charged with the enforcement of this law. The contention of the plaintiffs, grounded upon this statute, is that it is a substantial readoption of the common-law rule whereby the owner of animals is liable in any event for damages sustained by reason of trespassing on lands of another. Section 5765, L. O. L., provides in substance that, if any horse, cattle or stock break into any inclosure, the fence being of the height and sufficiency defined by the sections of the statute already quoted, the owner of such animal shall be responsible for the first trespass in the true value of the damages, and for subsequent trespasses in double damages. Construing this section, this court decided, in the case of ·*Campbell* v. *Briedwell,* 5 Or. 311, that, in an action for trespass by the animals of another, the complaint must set forth facts showing an inclosure built in substantial compliance with the statute. The effect of that decision in the portion of the state to which the statute is applicable, including Marion County, is to reverse the common-law rule, and compel the land owner to fence against stock, instead of requiring the owner of the stock to keep it within his own inclosure. The section mentioned was part of the act of 1870 (Laws 1870, p. 21). The sub-

sequent statute of 1907 of which Section 5575, L. O. L., is a part contains nothing necessarily conflicting with the former legislation. It provides a penalty in favor of the state for the use of the school fund for a violation of the rule to be established by a majority of the votes against stock running at large. As road supervisors are specially charged to see that the law is obeyed, it seems that the legislative intent was that, whereas stock was formerly allowed to run on any uninclosed lands, including highways, now by vote of the people such animals may be excluded from public roads and other open places, but that the rule is to be enforced by a penalty, and has nothing to do with damages to individuals. It does not affect private causes of action. Adverting to the well-known rule that all statutes are to be considered to stand, unless the conflict among them is irreconcilable, and that repeals by implication are not favored, we find that these enactments are not incompatible with each other, but that the later one merely furnishes a cumulative remedy against stock running at large. The new law creates a cause of action in favor of the state, and does not in any sense trench upon or modify the cause of action provided by the former for an individual sufferer from the trespassing of stock.

In other words, the former statute has limited the rights of the land owner, and defined his duties upon which depend his recovery of damages caused by trespassing stock. The mandatory language of the statute applicable to that part of the state in which Marion County lies is that "all fields and inclosures shall be inclosed with a fence sufficiently close," etc. The land owner must bring himself within the conditions imposed by the statute, else he cannot prevail, for the former law is quite as obligatory upon him as the later statute is upon the stock owner. The tenant of the

close, being the moving party, must recover on the strength of his own cause of action, and can take nothing by the weakness of his adversary's situation. Besides this, the statute forbidding stock to run at large, after an adverse vote, is penal in its nature, and is to be construed strictly, so that it cannot be held to confer new rights or impose consequences not directly defined by its terms. A statute designed mainly to obviate the evil of the obstruction of highways by roaming stock, and imposing a penalty, ought to be construed so as to enlarge a remedy for private parties which is already defined and limited by another law to which no reference is made by the later enactment. The court was therefore in error in stating to the jury that the defendant could not be heard to say that the premises of plaintiffs were not inclosed by a sufficient fence.

For these reasons, the judgment of the lower court is reversed and the cause remanded for a new trial.

REVERSED.

MR. JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.