Argued February 24, reversed and remanded March 22, 1921.

## LEMERY *v.* LEONARD.

(196 Pac. 376.)

**Animals—Sheep Taken Up Held "Running at Large" With Owner's "Permit" Contrary to Statute Requiring Tender of Charges.**

1. Under Laws of 1919, Chapter 386, forbidding an owner to permit sheep to run at large, the animals are "running at large" if beyond the control of their owner, to "permit" meaning to allow by tacit consent or by not hindering, taking no steps to prevent, or to grant leave by express consent, or authorization, so that animals beyond the owner's control may run at large on the private lands of another, and, when taken up by the owner of the lands, the owner of the sheep must tender lawful charges for their keep as required by the statute before he can recover them.

From Marion: PERCY R. KELLY, Judge.

Department 2.

The complaint avers a cause of action in the usual form of replevin, based upon the taking of nineteen head of sheep by the defendants on August 5, 1919. The answer admits that the plaintiff is the owner of the sheep and that they were of the value as stated in the complaint, but otherwise, except as thus admitted and as alleged in the defendants' further and separate answer, the entire complaint is denied.

After stating that the defendants were lawfully in possession of certain lands located in sections 6 and 7, township 5 south of range 2 west, and section 1, township 5 south of range 3 west of the Willamette meridian in Marion County, Oregon, and that the plaintiff operated another farm adjoining that of the defendants, the answer continues thus:

"That during all the times hereinafter mentioned, the plaintiff was permitting the sheep mentioned in

_____

1. On liability of owner for injury to person or property on highway by animal running at large thereon in violation of statute, see notes in 14 Ann. Cas. 624; 16 L. R. A. (N. S.) 647; L. R. A. 1918D, 200.

the complaint to run at large and to go on the said farm so in the possession of defendants, without the consent of defendants or of the owners of said lands, and on or about the fourth day of August, 1919, while said sheep were so at large and trespassing on said lands, the defendants took up said sheep, and immediately notified the plaintiff thereof; but, before being able to advertise the same for sale as by law provided, the plaintiff instituted this action, and filed herein an affidavit and undertaking for the immediate possession of said sheep, and in pursuance to an instruction indorsed on said affidavit by plaintiff, the sheriff of Marion County, Oregon, took possession of said sheep and delivered the same to the plaintiff, who has ever since had possession of the same.''

The defendants say they were required to keep the sheep twenty-one days, and that twenty-five cents per day for each sheep is a reasonable charge for taking up and keeping the same, amounting to a total of $99.75, and hence claim a special property in the sheep, to wit: the right to hold possession thereof until said charges are paid. The answer closes with the allegation that the ''plaintiff has failed and refused to pay or tender payment of said charges or any part thereof.''

The court sustained a general demurrer to the further and separate answer thus outlined. Afterward, on motion of the plaintiff for judgment on the pleadings, the plaintiff waiving all claim for damages, the court entered judgment to the effect that the plaintiff is the absolute owner of, and entitled to the possession of the sheep described, with the alternative judgment in the usual form. The defendants appeal.

REVERSED AND REMANDED.

For appellants there was a brief over the name of *Messrs. Smith & Shields,* with an oral argument by *Mr. Roy F. Shields.*

For respondent there was a brief over the name of *Messrs. Carson & Brown,* with oral argument by *Mr. Thomas Brown.*

BURNETT, C. J.—1. This action is governed by the provisions of Chapter 386, page 688, Laws of 1919. In Section 1 of the act it is provided that after the law goes into effect it shall be unlawful for the owner to permit any sheep ''to run at large or to go on the lands of another without permission of such owner in Marion County, Oregon,'' except in a designated portion thereof. The land described in the complaint is within the prohibited portion of the county. In Section 2 it is said, substantially, that ''any animal enumerated in Section 1 of this act, found running at large in the portion of Marion County above described may be taken up by any person.'' Provision is made for immediate personal notification of the owner, if known, or if unknown, by publication. It is said in Section 3 that the owner or his agent may retake possession of his animals ''from the person so taking up at any time prior to the sale thereof as hereinafter provided, by first tendering to such person his charges for so taking them, which shall be'' twenty-five cents per day for each head of sheep, to be paid ''to the person taking up the same for the time he has held it, and also the cost of publishing the notices in the newspaper.'' Direction is given for advertising and sale of the animals and the disposition of the proceeds. In Section 7 it is laid down that ''no suit, action or

proceeding shall be maintained in any court to recover the possession of any animal taken up from the person so taking it up under the provisions of this act, until the sum of money due under the provisions of this act has been tendered to the party or person taking up the same."

We must bear in mind that the question before us is one of pleading, and not of proof. The averment is, in substance, that the plaintiff permitted the sheep mentioned in the complaint to run at large and to go on the farm of the defendants. It is argued by the plaintiff in effect that it is impossible within the terms of the statute in question for animals to run at large on private property; that the enactment clearly contemplated that the running at large must be in some public place such as commons or the highway, and that the answer, having stated that the sheep in question were permitted by the plaintiff to run at large upon a private farm, is a contradiction of terms, and hence insufficient as a defense. We are therefore concerned for the present with a true definition of the term "running at large." At this stage of the discussion, the matter of permitting such a thing must be laid aside temporarily. A great deal has been written under different statutes about this expression. In *Keeney* v. *Oregon R. & N. Co.,* 19 Or. 291 (24 Pac. 233), the court, speaking by Mr. Justice LORD, had occasion to discuss the phrase, "running at large" respecting livestock. That was an action against the railroad company for killing sheep on its unfenced track by the operation of its trains. At that time the statute provided that allowing stock to run at large upon common unfenced range or upon inclosed land owned by or in the possession of the owner of such stock, should not be

99 Or.—43

deemed or held to be contributory negligence. The stock involved was a band of sheep pastured on unfenced range in Gilliam County. They were under charge of a herder, who drove them to the Columbia River, which at that point runs substantially parallel with and close to the railway track. Crossing the track, the herder left the flock between the road and the river during the night and went to his cabin to sleep. Next morning he drove the sheep to water and returned to his cabin to cut some wood, when he saw the sheep crossing the track, returning towards their range. Seeing no train within a distance of two miles, he went to get his horse, and then heard the train coming. He hastened to get the sheep off the track, but they became frightened at the noise of the locomotive and cars, crowded together on the track, and some were killed by the train. The opinion uses this language:

"Stock running at large are animals that roam and feed at will, and are not under the immediate * * control of anyone. They may be in an inclosure which may restrain the limits in which they shall wander and feed, or they may be on an unfenced range, relatively without limit, where they may roam and feed at will: but in either case they are not subject to the direction and control of anyone. So to speak, they are master of their own movements, going whither they will without personal direction or control. In such cases, if they wander upon the track of a railroad and are killed, the owner in allowing them to run at large is not guilty of contributory negligence, and precluded from a recovery. But stock or sheep in charge of a herder and subject to this control, whether in an inclosed field or upon a range, is not stock running at large, as the places whither they wander and feed or lie down to rest are selected by him and subject to his direction and control. * * In such case, the stock is not to be

deemed running at large within the meaning of the statute so as to exclude the defence of contributory negligence.''

The principle underlying the question under discussion is that, if the animals are beyond the control of their owner, they are ''at large,'' irrespective of the place where they may be. For instance, in *Conway* v. *Jordan,* 110 Iowa, 462 (81 N. W. 703), it was held that if the plaintiff turned his bull into a pasture that was not properly fenced and that did not restrain him, and the bull escaped therefrom into an adjoining field, he would be at large. To the same effect are *Duggan* v. *Hansen,* 43 Neb. 277 (61 N. W. 622); *Fraser* v. *Hawkins,* 137 Ark. 214 (208 S. W. 296); *Hosley* v. *Bamber,* 199 Mich. 655 (165 N. W. 687). In *McKenzie* v. *Newton,* 89 Ark. 564 (117 S. W. 553), it was held that, under Section 5451, Kerby's Digest, animals are ''running at large'' if they are within the corporate limits of a town without being under the control of anyone. In *Paris* v. *Hale,* 13 Tex. Civ. App. 386 (35 S. W. 333), according to the syllabus:

''An animal is running at large, within the meaning of a city ordinance requiring the city officers to impound animals 'running at large,' and providing for their sale after reasonable notice, though it has escaped from the inclosure in which it was kept by the owner without his knowledge or fault.''

In *Hinman* v. *Chicago etc. Ry. Co.,* 28 Iowa, 491, the railroad was required to fence its track against stock running at large. The court held:

''In our opinion, the words 'running at large,' as used in the section above named import that the stock are not under control of the owner; that they are not confined by inclosures to a certain field or place, nor under the immediate care of a shepherd or

herdsman; that they are left to roam wherever they may go."

*Inman* v. *Chicago etc. Ry. Co.*, 60 Iowa, 459 (15 N. W. 286), was a case where a team, frightened by the trains of the railroad company, broke loose from the place where it was tied and ran upon the track two miles away, where the track could have been fenced, and was injured by collision with a train. The court held the principle as laid down in 28 Iowa, 491, with this addition:

"Where the animal escapes from the control of the owner, and cannot be caught by the owner, then such animal would be running at large, within the meaning of the statute."

*Hammond* v. *Chicago etc. Ry. Co.*, 43 Iowa, 168, held that a mule which got out of its stable on its owner's premises, escaped through an open gate which it was the owner's duty to keep closed, went upon a railway track where the same could have been fenced, and was killed, was running at large. *Valleau* v. *Chicago etc. Ry. Co.*, 73 Iowa, 723 (36 N. W. 760), teaches that a steer, straggling from the main herd which was being driven across the track by the herder in charge, was running at large.

As stated, the underlying principle of these decisions is that the animal is running at large, if beyond the control of its owner. The control need not be actual, manual, physical restraint. It is said in 18 Am. & Eng. Ency. Law (2 ed.), 536:

"Perhaps no precise abstract rule under the statute can be laid down, applicable to every case, as to the nature, character, and amount of restraint necessary to be exercised over a domestic animal when suffered to be on the highway incident to its use. But the restraint need not be entirely physical; it may depend much upon the training, habits and in-

stincts of the animal in the particular case; and the sufficiency of the restraint is to be determined more from its effect upon and its controlling and restraining influence over the animal than from its nature or kind.''

For instance, in *Jeffries* v. *State,* 102 Ark. 373 (144 S. W. 514), it was held that a cow habitually driven along a highway to pasture in the morning and regularly returning in the evening to be milked, was not running at large. This was under a statute which relieved from the charge of larceny the party who took up an unmarked animal running at large on the commons, but made him liable only civilly to the owner. The point was, that the training of the animal by its owner was a sufficient restraint of it, so that it could not be said to be running at large, although beyond his immediate manual control. That, also, was the essence of the holding in *Gooding* v. *Atchison etc. Ry. Co.,* 32 Kan. 150 (4 Pac. 136), where a bull was within his owner's inclosure through which ran the defendant's unfenced track. It was there decided that the animal was not running at large, although he wandered upon the track which the defendant was required by law to fence, but did not. In other words, the bull was at all times within the usual control of his owner.

The case in hand is to be distinguished from *Ball* v. *Croisan,* 68 Or. 455 (137 Pac. 225). There the plaintiffs sought to recover damages for the trespass of the defendant's stock upon their premises. Their right to recover under the statute as it stood at that time depended upon whether or not they had a lawful fence inclosing the premises upon which the trespass was committed. The statute here involved has been enacted since that decision and creates a pro-

cedure quite independent of and in addition to previous laws. The matter of damages is not here involved. The taking up of stock while they were running at large is pleaded as a defense to the action, under the statute which says in Section 7 that no action shall be maintained to recover the possession of stock taken up under the act, until the statutory fees have been paid. The precedents cited by the plaintiff ignore the fundamental reason of the definition of "running at large." In most instances they depend upon the attendant principle that one cannot be said to have permitted a thing of which he has no knowledge or means of knowledge, so, that, if his animals escape from his inclosure without his knowledge or negligence, he does not come within the prohibitions of the statute against "permitting" his stock to be at large. To "permit" means to allow by tacit consent or by not hindering, taking no steps to prevent, or to grant leave by express consent or authorization: *Holly & Co.* v. *Simmons,* 38 Tex. Civ. App. 124 (85 S. W. 325). And so, the owner who knowingly allows his dog to run loose in a field where rabbits are kept and where it kills a rabbit, permits such dog to run at large in a field inhabited by rabbits: *Connor* v. *Fogg,* 75 N. J. L. 245 (67 Atl. 338). The principle is thus stated in 3 C. J. 180:

"There is a distinction to be noted between a statute which attaches a penalty to the act of 'permitting animals to run at large,' and one which makes it the duty of some official of a municipality to take up an animal 'found running at large.' Suffering or permitting an animal to go at large implies knowledge, consent, or willingness on the part of the owner, or such negligent conduct as is equivalent thereto; but does not comprehend a case where, through some untoward circumstance, the owner is unable to watch

and care for it in a particular instance, or where animals escape from their owner, after due precaution to secure them has been taken, and without fault or negligence on his part, and he makes immediate and suitable efforts to recover them. * * But an animal is running at large, within a statute or ordinance requiring animals 'found running at large,' to be impounded, although it has escaped from the inclosure in which it was kept, without the knowledge or fault of the owner.''

See also, on this point, *Evans v. Holman,* 202 Mo. 284 (100 S. W. 624); *Peck* v. *Liesmann,* 142 Mo. App. 476 (127 S. W. 107).

That is to say, it is one thing for stock to be running at large, or, what is synonymous, beyond the control of the owner, but permitting it is quite another matter.

In the instant case, by proper allegation the defendants have set up a statutory condition preventing the maintenance of this action for want of tender of the lawful charges. Whether these allegations can be proved or not, is not before us, but the trend of authority has been indicated for the guidance of the parties. We hold in conclusion that animals beyond their owner's control may run at large on the private lands of another.

There was error in sustaining the demurrer. The judgment is reversed and the cause remanded for further proceedings.     REVERSED AND REMANDED.

JOHNS, BEAN and BROWN, JJ., concur.