No. 28,519.

HENRY BERTRAM, *Appellant*, v. JOE BURTON, *Appellee*.

(281 Pac. 892.)

Opinion filed November 9, 1929.

*J. R. Hyland,* of Washington, for the appellant.

*Edgar Bennett* and *A. C. Bokelman,* both of Washington, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: In this case the plaintiff has appealed from the judgment of the court sustaining defendant's motion for a directed verdict and judgment in his favor at the close of all the evidence.

The action was one for damages predicated upon the alleged negligence of defendant. The petition alleged that plaintiff was a farmer and was full-feeding a herd of cattle in a feed lot near a public road on the section line adjoining his land; that the defendant and his employee were driving a large bull along this public road "and negligently and wrongfully permitted and allowed the said bull to break into and enter the said feed lot containing the said fat cattle of plaintiff"; that defendant went in the feed lot and drove the bull out; that as a result one of plaintiff's cattle, of the value of $110, was injured so that it died in a few hours, and that all of the cattle in the feed lot, about fifty head, failed to eat prop-

erly or put on flesh for several days, to plaintiff's damage in the sum of $50. The answer was a general denial.

There is but little conflict in the evidence, which may be stated as follows: Plaintiff's farm is on the east side of the public road, and at the point in question there is no fence along the road. His feed lot is back from the road 100 feet or more. The feed lot is surrounded by a stone wall and is about 300 feet east and west and about 600 feet north and south. On the north side of this feed lot the stone wall is five or six feet high, and at the east end of the north side of the feed lot is the barn, which forms a part of the north side of the lot. The barn has a basement. North of the feed lot and west of the barn the dirt had been filled in to make a driveway to the second floor of the barn, and the ground there is level with the top of the stone wall. At the time in question plaintiff had about fifty yearling steers in this feed lot which he was full-feeding and which were then about ready for market. Defendant was a farmer and stockman, having a farm south of plaintiff's and also one north of it, and at times moved his stock back and forth from one farm to the other along the road by plaintiff's farm. On the day in question the defendant and his hired man, W. D. Pierce, were driving defendant's bull, an animal weighing 1,200 to 1,300 pounds, without horns, from one farm to the other along this road. As they approached plaintiff's farm defendant was riding a horse, Pierce was behind him walking and leading his saddle horse, the bull was ahead of them in the road. When they came near to plaintiff's feed lot the bull left the road, went on the land of plaintiff, and up on the driveway north of the feed lot leading to the barn. Defendant rode to where the bull was on the driveway. The bull jumped off of this driveway into the feed lot. The steers in the feed lot gathered about the bull, and the bull struck or lunged at them with his head, striking this way and that. Defendant then rode around to a gate to the feed lot, and with the help of plaintiff's son got the bull out of the feet lot. The bull was in the feed lot perhaps not more than ten minutes, but his presence there caused much excitement among the cattle in the lot. One of them was seen to go off to one side by himself, later to lie down, and the next morning was found dead. A veterinary surgeon examined him and found a rupture in the left side in the flank. There was an irregular-shaped opening eight or ten inches across through which the entrails were protruding through the abdominal wall but inside the skin. This

injury could have been caused by a severe blow, and was one that would cause the death of the animal in from four to twenty-four hours. There was evidence that this steer was worth $107, also that the excitement to the other cattle would cause them not to eat and to fail to make a gain for a few days, to their damage of about $1 per head. The trial court overruled the demurrer to plaintiff's evidence, but at the close of all the evidence sustained defendant's motion for a directed verdict.

We are advised by the briefs and argument of counsel in this court that the reason, or at least one of the principal reasons, why the trial court sustained a motion for a directed verdict was that plaintiff had not shown that the herd law of 1872 (R. S. 47-301 et seq.) had been adopted by the board of county commissioners of the county. When this question was raised in the argument in the trial court plaintiff asked leave to reopen his case and to be permitted to show by the records of the office of the county clerk that the herd law had in fact been adopted in that county. This request was refused. Appellant complains of that ruling, and the principal argument of appellee in support of the judgment of the trial court is that the plaintiff had not made that showing. If the question whether the herd law of 1872 was in force in the county was important in the case this request should have been granted. The law was either in force in that county or it was not, and the evidence which would have determined that fact was of record and could have been readily furnished. A trial should be conducted to determine the rights of the parties under the law, and the court should have welcomed the opportunity to know whether or not that statute was in force. The ruling was an abuse of the discretion of the trial court, which would require a reversal if we deemed the question determinative of this case. In our view, however, it is not determinative of the case for two reasons: First, perhaps the stone wall five or six feet high, even with dirt on one side of it, is a construction that is a legal and sufficient fence under the general fence law (R. S. 29-101 et seq.), as defined in R. S. 29-104. (See Mo. Pac. Rly. Co. v. Shumaker, 46 Kan. 769, 773, 27 Pac. 126.) But since this point is not urged we shall not predicate our opinion thereon.

Second, the herd law of 1872 (R. S. 47-301 et seq.) relates to animals which shall not be allowed "to run at large." The bull in question was not running at large when it was being driven along the road by its owner and his employee. (Keeney v. O. R. & N. Co., 19

Ore. 291; *Nehr v. State,* 35 Neb. 638; *Johnson v. The Chicago & N. W. Ry. Co.,* 75 Ia. 157; *Donley v. Fowler,* 147 Mich. 288; *Leonard v. Doherty,* 174 Mass. 565; *Thompson v. Corpstein,* 52 Cal. 653; *Beeson et al., by Next Friend, v. Tice,* 17 Ind. App. 78; *Dixon v. Lewis,* 94 Conn. 548; 3 C. J. 179; 1 R. C. L. 1149.)

If defendant were permitting the bull to run at large he would be guilty of a misdemeanor under R. S. 47-105. The legislature which passed the fence law (R. S. 29-101 *et seq.*) also passed the statute which reads:

"All damages done by stock owned by freighters or drovers to crops adjacent to roads along which the trains or droves may be passing or herded shall be paid by the owners of the stock to the owners of the crops so damaged, without regard to fences." (R. S. 47-104.)

This statute makes it clear that the fence law was not enacted to relieve the owners of live stock, driven or herded, from liability. The presence or absence of fences has nothing to do with this liability. The statute makes the owner liable. His liability is not predicated on his due care, or lack of it. But the statute applies to adjacent crops only—it does not mention fat cattle in a near-by feed lot, and for that reason, at least, cannot be directly applied here as the measure of defendant's liability.

Now, since the bull in question was not running at large, and the fence law has no application, and the statute (R. S. 47-104) does not specifically apply to the situation, the liability of defendant depends upon the question of whether or not he was negligent, and whether injury to plaintiff's property resulted therefrom. In other words, his liability, if any, is simply a tort liability. The action was brought upon that theory. Plaintiff alleged that the injury to his property resulted from the negligence of defendant. The answer was a general denial.

The owner of a domestic animal is bound to take notice of the general propensities and characteristics of the class to which it belongs and must anticipate and guard against them if of a nature to cause injury, for he necessarily knows that some act causing injury will be committed if opportunity therefor is afforded. (3 C. J. 89, 93, 95; 1 R. C. L. 1099.) See, also, *Hartman v. Railway Co.,* 94 Kan. 184, 146 Pac. 335; and *Carl v. Ackard,* 114 Kan. 640, 220 Pac. 515, as having some bearing on the question. The facts in those cases, of course, are quite different from these, but the action in each case was predicated upon negligence. Here there was evi-

dence to the effect that when kept at home with milk cows the bull was not vicious, particularly towards persons in the cow lot, but the disposition of a bull being driven along a highway to go to a herd of cattle near by is so commonly known that defendant should have anticipated it.

Appellee argues that there was no showing that the bull was wrongfully or unlawfully on plaintiff's premises. That argument is based on some feature of the fence law, but we do not regard it as being sound as applied to this case. Certainly it cannot be said that defendant had any general right, or that any law gave him the right, to take the bull on the plaintiff's premises and put him in plaintiff's feed lot. We shall not attempt to comment on the evidence, or express any views as to the weight which should be given to it, further than to say that there was ample, substantial evidence to go to the jury in support of plaintiff's action as predicated upon the negligence of defendant and injury resulting therefrom.

The judgment of the court below will be reversed with directions to grant a new trial.