## JACKSON *v.* SUMPTER VALLEY R'Y CO.

### 93 Pac. 356.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

1. Contributory negligence is a matter of defense and the burden of establishing it is on defendant, unless plaintiff's declaration or evidence establishes it.

TRIAL—NONSUIT.

2. The province of a motion for nonsuit is in the nature of a demurrer to the evidence, and when it is sought to take advantage of a defect in the pleadings by such a motion, the pleadings should be construed liberally, as if on a motion by defendant for judgment, notwithstanding the verdict against him.

PLEADING—DEFECTS.

3. A party relying on a technical defect in a pleading is subjected to observance of technical rules.

RAILROADS—INJURY TO ANIMALS—CONTRIBUTORY NEGLIGENCE—PLEADINGS.

4. Where, in an action against a railroad company for killing cows on its track, the company as an affirmative defense alleged that plaintiff negligently herded cows along the right of way within switching limits at a station, with knowledge that the right of way was dangerous, a reply denying the averments of the answer, except that "certain cows of the plaintiff, being then and there under the immediate care, custody and control of plaintiff," construed liberally in favor of plaintiff, did not admit contributory negligence.

SAME—PLEADINGS.

5. An answer, in an action against a railway company for killings cows on its track, which alleges that plaintiff negligently herded "certain" cows along

the right of way within switch limits at a station, with knowledge of the danger, and that he negligently permitted the stock to remain on and along the track, and that thereby the stock sustained injuries, etc., does not, on a strict construction, raise the defense of contributory negligence, in the absence of any identification of the "certain" cows with those whose killing is sued for.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

6. In an action against a railway company for killing animals on its track, the question of contributory negligence of the owner, *held* for the jury.

TRIAL—QUESTION FOR JURY—EVIDENCE.

7. Where different deductions may reasonably be drawn from the evidence in a cause, the issues are for the jury; and, to justify the granting of a nonsuit, the facts and inferences must be undisputed.

RAILROADS—INJURY TO ANIMALS—CONTRIBUTORY NEGLIGENCE.

8. Whether one is guilty of contributory negligence in turning his stock out to graze on uninclosed lands near a railroad track, is a question for the jury.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ORDINARY CARE.

9. One is not guilty of contributory negligence, unless he fails to exercise ordinary care; and there is no want of ordinary care when, under the circumstances, he does not omit anything which an ordinarly prudent person similarly situated would not have omitted.

SAME—QUESTION FOR JURY—NEGLIGENCE.

10. Where both the duty to exercise care and the extent of its performance are to be ascertained as facts, the jury alone can determine what is negligence, and whether it has been proven.

RAILROADS—INJURY TO ANIMALS—STATION GROUNDS.

11. In an action against a railroad for injuries to animals on its track, the evidence showed that there were about one and one-half miles of unfenced track from one station towards another; that it was three-quarters of a mile from the station to the head of a switch for a siding running back toward the station used for storing engines, etc., and that further on in the direction of the other station, about one hundred and fifty yards from the switch was a branch line leaving the main line and forming the head of a "Y." The animals were killed near the switch for the siding. There was nothing to show that the siding was used in connection with a depot at the station. *Held*, that the question whether the animals entered the track within depot grounds was for the jury.

APPEAL—REVIEW OF EVIDENCE—BILL OF EXCEPTIONS.

12. Where the evidence is not in the bill of exceptions, and a transcript of what appears to be evidence is in the record, but the same is not identified by the court, or certified to be any or all of the testimony in the case, the court on appeal will not consider it.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. COMMISSIONER SLATER.

Plaintiff sues on two causes of action to recover in damages the value of some of his milch cows, which were killed and injured by defendant's moving railroad cars and engine on its track near the town of Sumpter, in Baker County. A nonsuit

was granted as to the first cause of action, which is not to be considered here. For the second cause of action it is averred that a number of plaintiff's cows, on August 6, 1906, went upon defendant's unfenced track, and four of them were killed and two were injured by one of defendant's moving trains and engine drawing the same. The answer denies generally the averments of the complaint, excepting defendant's incorporation and ownership and operation of the railroad leading from Baker City to Sumpter on which the cows were killed.

As an affirmative defense, it is alleged, in substance, that on August 6, 1906, certain cows of plaintiff being then and there under the immediate care, custody, direction and control of plaintiff and his servant, one Robert Allen, were by them carelessly and negligently, and without right or authority, wrongfully herded and pastured upon and along defendant's right of way and railroad track, within its switching and station yards, inside the corporate limits of the City of Sumpter, and that plaintiff and his servant, Robert Allen, well knowing that defendant's trains were regularly passing over said tracks and right of way, and well knowing said stock was within defendant's switching yards, and that said right of way and said switching yards were dangerous and unsafe places for said stock to be, and that they had no right to have said stock in said places, carelessly and negligently permitted said stock to remain upon and along said track and right of way, and that thereby said stock sustained the injuries alleged, if at all, and that whatever damage plaintiff may have suffered from said injuries was due solely to his own said negligence and carelessness in driving and herding his said stock upon and along defendant's track and right of way, as aforesaid, and not to any fault or negligence of this defendant. By the reply, plaintiff denied generally all the averments of the answer, excepting that "certain cows of the plaintiff, being then and there under the immediate care, custody and control of plaintiff." After the issues were thus joined a trial was had before a jury, and at the conclusion of plaintiff's testimony defendant moved a nonsuit, on the ground that the evidence shows plaintiff to have been guilty

of contributory negligence sufficient to bar his right to recover. This being overruled, defendant offered his testimony, and the cause was submitted to the jury, which returned a verdict in favor of plaintiff in the sum of $330, upon which judgment was entered, from which defendant appeals.        AFFIRMED.

For appellant there was a brief over the names of *John L. Rand* and *Vernor W. Tomlinson,* with an oral argument by *Mr. Tomlinson.*

For respondent there was a brief with an oral argument by *Mr. Charles H. McColloch.*

Opinion by MR. COMMISSIONER SLATER.

1. The first and principal error relied upon to reverse the judgment is the denial by the court of defendant's motion for a nonsuit to the second cause of action. In this State contributory negligence is a matter of defense, and the burden of establishing it is on the defendant: *Johnston* v. *O. S. L. Ry. Co.* 23 Or. 94 (31 Pac. 283) ; *Grant* v. *Baker,* 12 Or. 329 (7 Pac. 318). But, if plaintiff's declaration or evidence establishes his own contributory negligence, it bars his recovery, no matter where the burden rests: 7 Am. & Eng. Ency. (2 ed.), 454; *Tucker* v. *Northern Terminal Co.* 41 Or. 82 (68 Pac. 426) ; *Scott* v. *Oregon Ry. & N. Co.* 14 Or. 211 (13 Pac. 98).

To support its contention, counsel for defendant urges with much earnestness that the pleadings on the part of plaintiff admit that the cattle went upon the track while under the immediate care, custody and control of plaintiff. This arises, it is argued, from the form of the denial used in the reply. What the pleader intended to admit by excluding the quoted words from the effect of his denial, is doubtful. Defendant's counsel arrive at their conclusion by a strict construction of the language quoted, and contend that such should be the rule. But, if their assumption as to the rule of construction and their interpretation of the implied admission be correct, the result would have entitled defendant to a judgment on the pleadings, which they should have asked before going to trial, and not wait to raise the question on motion for nonsuit.

2. The province of a motion for a nonsuit is in the nature of a demurrer to the evidence (*Brown* v. *Oregon Lumber Co.* 24 Or. 315: 33 Pac. 557), and it is an unusual method of taking advantage of a defect in the pleadings, and the appellant, rather than respondent, should be held to strict rules.

"It has been held," says Mr. Justice THAYER, in *Specht* v. *Allen,* 12 Or. 117-122 (6 Pac. 494, 495), "that when a pleading did not contain a cause of action or defense, as the case might be, and the objection to it was made for the first time at the trial by opposing the introduction of evidence to support it, the party would be deemed to have waived any objection to its sufficiency. I am of the opinion that the party in such case should be compelled to resort to a motion for judgment, notwithstanding the verdict, in case one were to be rendered against him, as the party interposing the pleading ought, when it had not been demurred to, to be entitled to the presumptions a verdict in his favor would afford. That appears to me to be the course the code intends should be pursued. But, on the other hand, where a party has no sufficient pleading to stand upon, and judgment has gone against him, he is not in a favorable condition to ask for its reversal, particularly where a verdict would not have cured the defect. An appellate court in such a case would, I think, consistently determine that the error had not injured him."

So, then, in this instance, the reply should be construed as if the question arose upon a motion by defendant for a judgment. notwithstanding the verdict, that is, liberally, so that, if possible, the verdict may be sustained.

3. Under these limitations, we are constrained to hold that the language used in the reply was intended to mean no more than that certain cows of the plaintiff were at the time of the accident under the care, custody and control of plaintiff, not that they were under his care, custody or control at the time they went upon the track and right of way of the defendant. When so construed and applied to the testimony hereinafter considered, plaintiff has relieved himself from any necessary inference of negligence on his part. But defendant is in no better condition, even if the language of the reply be construed strictly. A party who relies upon a technical defect is sub-

jected to observance of technical rules: *Hermann* v. *Hutcheson,* 33 Or. 239 (53 Pac. 489); *Small* v. *Lutz,* 34 Or. 131 (55 Pac. 529, 58 Pac. 79); *Bilyeu* v. *Smith,* 18 Or. 335 (22 Pac. 1073).

4. The admission, claimed by defendant to be included in the language of the reply above quoted, could not arise, except that reference be made to the affirmative matter of the answer to interpret it. The words "certain cows of the plaintiff" of themselves do not necessarily mean the cows mentioned in the complaint upon which the cause of action is based. The answer contains the same language, and there is nothing elsewhere therein that identifies the "certain cows of the plaintiff" to be those described in the complaint. For all that appears upon the face of the pleadings, the averments of the answer may be true, and yet be no bar to a recovery on the cause of action set forth in the complaint. Plaintiff may have had another and different cause of action, which for some reason he did not see fit to include in his complaint.

It necessarily follows that upon a strict construction of the answer, the defense of contributory negligence is not in this case; at least defendant, when judgment has gone against him, is not in a favorable position to ask for its reversal for this particular alleged error: *Specht* v. *Allen,* 12 Or. 117 (6 Pac. 494). Assuming, however, that the issue of contributory negligence is made by the answer, we will now examine plaintiff's testimony and ascertain whether any indisputable inference can be drawn from the uncontradicted facts which disclosed the omission or commission of any act by plaintiff or his servant, which the law adjudges negligent. The facts disclosed by the record are: That plaintiff operates a dairy in the vicinity of Sumpter, and had in his herd about 38 cows. That in the month of August, 1906, he pastured his cows for the most part on a farm called in the record the "Jett" place, situate about 2 miles east from the dairy and about 1½ miles south and east of Sumpter Depot, and through which defendant's main line going from Sumpter to Baker City passes, but sometimes the cows were turned out to feed upon the commons. That defendant's track is unfenced from Sumpter Station to the Jett place. On the morn-

ing of August 6, 1906, the cows were driven by one of plaintiff's hired men out to feed upon the commons, and left back of the Jett place and in the vicinity of the smelter, which is upon or near a branch road leaving the main line between 1¼ and 1½ miles south and east of the Sumpter Depot and going to Austin. That between the smelter and defendant's right of way and plaintiff's barn or dairy the country is not fenced, and is covered with brush, but affords good pasturage. About 3 o'clock in the afternoon of that day Robert Allen, plaintiff's employee, whose duty was to drive the cows home in the evening, went from the dairy easterly down the valley hunting some stray horses, intending to bring the cows home on his return in the evening. As he went he noticed three of the cows coming towards Sumpter up the track of the branch road from a quarter to a half mile distant from the main track, and about one half mile from where the cows were killed. The rest were scattered between the Jett place and the smelter. Allen went on down the valley, secured the horses, and returned, arriving in the same vicinity between half past 5 and 6 o'clock. He then saw 15 or 20 head of plaintiff's cows feeding and drifting toward Sumpter on defendant's right of way, and between the arms of a "Y" formed by the branch line to Austin, the main line to Baker City, and a connecting curve. The horses having taken a canter along the county road toward home, Allen turned out of the road after the cows and drove those nearest him from the "Y" a distance of 200 or 300 yards to the county road, then turned back to get 17 or 18 others which had gone ahead up the main track toward Sumpter beyond the junction a distance of some 450 feet. · At this point on the west side of the track, there is a rocky point within 5 feet of the center of the track, and on the east side within about 30 feet is Powder River. The space between the track and the river was at one time traveled as a county road, but for a long time prior to the date of the accident, it had been filled within a few feet of the track with sawlogs and brush, leaving very little space for loose stock to travel on. But there is a stock trail there, winding through the logs for a distance of 75 to 100 yards, then turns off to the

left into the county road. About 150 feet further up the track toward Sumpter from the rocky point is a switch for a short siding called "Sumpter Siding," and 25 feet beyond this switch is the frog of the switch. Sumpter Depot or Station is three fourths of a mile distant from the switch. Allen had consumed about 10 minutes of time in getting the first bunch of cows out of the "Y" and into the county road, when he turned back to get the remainder. These were 200 or 300 yards from where the first ones were found, and were feeding along the track toward this rocky point. Before Allen overtook them they had passed this point, and just as he arrived at the point he saw the train coming from Sumpter toward him. He endeavored to get in ahead of the cows and turn them off the track, but the engine struck two of the cows at the frog, injuring them, and killed four others at the switch stand.

5. The theory of the defense is, that Allen was driving the stock homeward when they first went upon defendant's track, and that he was attempting to drive them along this trail on the right of way because by that route it was one quarter of a mile nearer to the dairy than by the county road. But he positively denies both of these assertions, and swears that he never at any time drove them through there; that when he first saw the cows upon the right of way he immediately went to them and began rounding them up and getting them off the right of way into the county road, taking those first that were nearest to him, preparatory to driving them home; that he had been engaged in that matter no more than 10 minutes when the cows were killed. To support its theory, however, defendant on cross-examination of plaintiff, offered in evidence, as containing admissions against his interest, what purports to be an owner's statement of stock injured or killed, with plaintiff's name as claimant typewritten at the bottom thereof, under which is written "per G. E. Allen." This statement is upon a printed blank form furnished by the company, and is in the form of questions and answers. It contains a statement of the time and place of the accident, a description and the value of the cows injured and killed, and, besides others, these questions and

answers: "Was stock in charge of any one at the time? If so, who? Robert Allen. State how you know the stock was struck by the train? The cows were being driven home." Plaintiff swears that he did not personally know how the stock were killed, or whether they were being driven home by any one; that, by telephone, he directed G. E. Allen to fill out and present this claim blank for him, giving Allen, at the time, information about the number, description and value of the stock, and told him that Robert Allen could give him other necessary facts; that he never saw the blank after it was filled out, and did not know that it contained such answers. Robert Allen swears that he did not give this particular information to his father, G. E. Allen. Under such circumstances, it could hardly be said, as a matter of law, that plaintiff is bound by the answers; but, if he were, it is but a statement, not conclusive, and is subject to explanation.

6. On the face of it, without explanation, the statement is that at the time of the accident the stock was in charge of Allen and were being driven home by him, not that they were in his charge when they went upon the track. When, however, the statements are placed with the explanatory facts as disclosed by the evidence of Allen, it can at least be said that different deductions may honestly and reasonably be drawn therefrom by different minds, and under such circumstances the question is one proper to be submitted to a jury: *Hedin* v. *Suburban Ry. Co.* 26 Or. 155 (37 Pac. 540).

7. It is also contended by defendants that Allen was negligent in not going first to those cows that were on the main track and removing them; for, it is argued, they were in the most danger, and his duty was to attend to them first. It may be conceded that it is the law that one who sees his cattle in danger upon a railroad track and can by reasonable exertions get them off, he is bound to do so (*Milburn* v. *Kansas City, etc., Co.* 86 Mo. 104), or that one having stock under his immediate care, custody and control, who voluntarily drives or puts them in a place of danger, or carelessly permits them to wander from his control into a place of danger, is guilty of contributory neg-

ligence: *Keeney* v. *O. R. & Nav. Co.* 19 Or. 291 (24 Pac. 233) ; *Ohio & Missouri Ry. Co.* v. *Eaves,* 42 Ill. 288. But a motion for a nonsuit is in the nature of a demurrer to the evidence. It admits the truth of plaintiff's evidence and of every inference of fact which the jury may legally draw from it. The sufficiency of the evidence is for the jury, provided the court shall be of the opinion that there is any evidence tending to sustain the complaint: *Brown* v. *Oregon Lumber Co.* 24 Or. 315 (33 Pac. 557). And to justify granting a nonsuit facts should be not only undisputed, but conclusions to be drawn from them indisputable. If different minds may honestly draw different conclusions from the facts, though undisputed, the case should be left to the jury: *Peabody* v. *O. R. & N. Co.* 21 Or. 121 (26 Pac. 1053: 12 L. R. A. 823).

8. As a matter of law, then, the court cannot say that plaintiff was guilty of contributory negligence in turning his stock out to graze on uninclosed lands near defendant's track or depot. That is a question for the jury: *Wilmot* v. *Oregon R. Co.* 48 Or. 494 (87 Pac. 528: 7 L. R. A. (N. S.), 202). Nor if plaintiff's testimony is to be believed, can negligence be imputed to him because his stock was found upon defendant's track. They were not in his immediate care, custody or control when they went upon the track, nor in the care of his servant, nor did either of them carelessly permit them to wander from his control into the place of danger where they were found.

9. If counsel by argument can draw a different inference from the evidence, it is derived only by the process of weighing testimony and by giving credence to one piece of testimony and rejecting another where there is a conflict. But when the right determination of a case depends upon the weight to be given evidence, it is for the consideration of the jury: *Anderson* v. *North Pacific Lumber Co.* 21 Or. 281 (28 Pac. 5). It is undisputed, however, that the servant about 10 minutes before the accident found plaintiff's stock in a place which imparted notice of danger, not notice of a present and imminent danger by seeing a train approaching, for that is not the fact, but because the track itself is a warning of possible danger: *Dur-*

*bin* v. *Oregon R. & Nav. Co.* 17 Or. 5 (17 Pac. 5 : 11 Am. St. Rep. 778). He did not then know that any train was due from either direction, and he was compelled to act on the assumption that one part of the track was no more dangerous than another. Hence he first attended to those nearest to him. Had the fact been that when he first came upon the ground he saw a train coming from the opposite direction, or that he knew that a train was then due from that direction, it may have been his duty to have gone first to those cows that were nearest to the anticipated danger; but the facts show that Allen immediately upon discovery of the dangerous position of the cows, went with reasonable ·diligence to the scene and made at least some effort in good faith to perform his duty. the degree of which is for the jury: *Richmond* v. *McNeill,* 31 Or. 342 (49 Pac. 879). There could be no contributory negligence by plaintiff, except there is a failure on his part, or on the part of some person with whose negligence he is chargeable, to exercise ordinary care to avoid the injury, and such lack of ordinary care is the proximate cause of the injury: 7 Am. & Eng. Ency. (2 ed.), 373. And there has been no want of ordinary care, when, under all the circumstances and surroundings of the case, the person injured, or those whose negligence is imputable to him. did or omitted nothing which an ordinarily careful and prudent person similarly situated would not have done or omitted: 7 Am. & Eng. Ency. (2 ed.), 378.

10. When both the duty and the extent of its performance are to be ascertained as facts, a jury alone can determine what is negligence and whether it has been proven: *West Phila. Pass. Ry. Co.* v. *Gallagher,* 108 Pa. St. 524; *Robinson* v. *Cone.* 22 Vt. 213 (54 Am. Dec. 67). The court did not err in denying defendant's motion for a nonsuit.

11. The court refused to instruct the jury upon defendant's request to return a verdict in its favor, and this action of the court is assigned as error. This request was based upon no other contention than that made to support the motion for nonsuit, and that has been considered and disposed of adversely to de-

50 OR.——30

fendant. Defendant excepted to the giving of this instruction: "Whether or not defendant should have fenced that portion of its track upon which plaintiff's cattle entered is a matter for your determination from the evidence. If you find from the evidence that that portion of defendant's track was within defendant's depot yards, then the defendant was under no obligation to fence; otherwise it should have fenced," and error is assigned on that account. It is insisted that as evidence in this case is not conflicting or uncontradicted, it was not a question for the jury to determine whether or not the defendant ought to have fenced its track at the place or places where plaintiff's cattle were killed, or whether or not such places were within defendant's depot and switching yard, but that it was a matter of law for the court to declare.

Plaintiff's evidence shows that there are about 1½ miles of unfenced track from Sumpter toward Baker City; that it is three fourths of a mile from Sumpter to the head of a switch for a siding running back towards Sumpter about 200 feet, which is used for storing slab wood for the use of defendant's engines; that further on in the direction of Baker City, about 150 yards from this switch, the branch line to Austin leaves the main line and forms the head or point of the "Y." The cows were killed near the switch for the "Sumpter Siding," and on the side thereof toward Baker City. There is no suggestion in plaintiff's evidence that Sumpter Siding was a part of or was used in connection with the depot at Sumpter.

12. The defendant's evidence is not found in the bill of exceptions; but there is on file a separate transcript of what appears to be some evidence taken in this case, and includes what purports to be some, at least, of defendant's testimony, but it is not identified in any manner by the court, or certified to be any or all of the testimony in this case, and for that reason it cannot be legally considered. However, as the parties have printed in their briefs some excerpts therefrom, we have not refrained from looking into it. It shows, in substance, that switching is done daily at the "Y" in reversing engines and

trains for the branch line; but this of itself does not tend to make the "Y" or that part of the main track between it and Sumpter Siding a part of the depot grounds of Sumpter Station, three fourths of a mile distant, or that of itself it constituted a separate and distinct depot or station, within the limitations stated in *Wilmot* v. *O. R. & N. Co.* 48 Or. 494 (87 Pac. 528 : 7 L. R. A., N. S., 202). Switching is not the principal thing that constitutes a depot, but is only an incident of it. In our judgment, the correct distinction is stated in an extended footnote to that case found in 7 L. R. A. (N. S.) 203, where it is said:

"A very clearly defined principle regulates this question—the principle of paramount public importance of the public good or convenience over private rights. Fence laws have been passed very generally in all parts of the country, compelling railroad companies to fence their tracks in order to protect individuals from injuries to their stock straying thereon. But at stations where the general public has a right of access, and the necessary transactions of the road require it, an exception either by express language in the statute or by construction of the courts has come to be made in almost every instance to the general obligation to fence, on the ground that the public right of access overrules the private right of protection. The question, then, of how far this exception to the obligation to fence extends, or, in other words, how far or what are station or depot grounds, is decided by determining how far the public convenience requires an open track."

There is no public convenience to be conserved at a place used exclusively for switching. The public has no right of access where no passengers get on or off the train or no freight is loaded and unloaded. There is a suggestion in the evidence, however, that sometimes freight billed to Sumpter is put off at this "Y" as an accommodation. But that fact cannot, as a matter of law, be said to be sufficient to create a general public right of access to defendant's tracks at that point, so as to excuse it from the duty of fencing. We are of the opinion, therefore, that the court could not, as a matter of law, declare the place where plaintiff's cows were killed to be a necessary part

of defendant's station at Sumpter, or part of an independent station at the "Y," so as to excuse it from the legal duty to fence its tracks.

It follows that the judgment must be affirmed.

AFFIRMED.

---

Decided 7 January, 1908.