'Argued September 23, modified October 13, 1915.'

# HOWELL *v.* HOWELL.

(152 Pac. 217.)

**Trusts—Resulting Trust—Evidence—Sufficiency.**

1. In an action involving title to land, evidence *held* insufficient to show a resulting trust in favor of the defendant; it appearing that her payments of money for the title to the land had been lost because title was in another than the person to whom she paid the money.

[As to definition of resulting trusts and the circumstances of their creation, see note in 51 Am. Dec. 751.]

**Appeal and Error—Presentation of Ground of Review in Court Below—Necessity.**

2. Where the case proceeded on the theory that defendant had denied plaintiffs' averments of fraud, and other paragraphs of the complaint containing similar averments were denied, the fact that two paragraphs were not specifically traversed cannot be taken advantage of on appeal; plaintiffs not having pointed out the defect.

**Partition—Decree—Vacation—Evidence.**

3. In a suit to set aside a decree of partition, evidence *held* to show that it was a family settlement and was not the result of fraud or oppression.

**Partition—Decree—Validity.**

4. A partition decree, which represented the result of a family settlement made in good faith, will not be disturbed because one attorney acted for all parties, some of whom were infants.

[As to parol partition and its validity, see note in 92 Am. Dec. 121.]

**Infants—Guardian ad Litem—Adverse Interest.**

5. In a proceeding for the partition of lands, the appointment of the mother of one of the infant heirs as its guardian *ad litem* will not avoid the decree, though it would have been better to have appointed someone not interested; the court having jurisdiction of the proceedings, and there being no taint of fraud.

**Partition—Decrees—Reformation.**

6. In a proceeding to reform and set aside a decree of partition, where one of the defendants admitted that she was only entitled to a dower interest instead of a fee, relief will be granted as to her.

**Partition—Decrees—Proceedings to Set Aside—Evidence.**

7. In a proceeding to set aside a partition of land, evidence *held* to show that the improvements on the tract awarded to defendant were made by her.

From Marion: WILLIAM GALLOWAY, Judge.

Department 2.    Statement by MR. JUSTICE HARRIS.

This is a suit by Grace Howell, Katie Howell Uhrig and Guy N. Howell against Fiducia F. Howell and Amy N. Howell.   The facts are as follows:

Joseph H. Howell and the defendant Fiducia F. Howell were husband and wife, and John M. Howell was their only child.   The plaintiffs Grace Howell, Katie Howell Uhrig and Guy N. Howell are the chil-- dren of John M. Howell and the defendant Amy N. Howell.   John M. Howell died intestate on July 26, 1907, and the death of Joseph H. Howell occurred on June 7, 1909.   W. D. Mohney and wife on March 14, 1890, conveyed 15.61 acres to J H. Howell and J. M. Howell; and on March 23, 1891, H. A. Thomas and George W. Watt transferred an adjoining 20 acres to J. H. Howell and J. M. Howell.   After the death of John M. Howell, a suit was commenced on August 3, 1908, by J. H. Howell and Fiducia F. Howell, against Amy N. Howell and her three children, for the purpose of partitioning the 35 acres held in the name of Joseph H. Howell and his deceased son John M. Howell.   The complaint filed in the partition suit alleged that the parties thereto were the "owners as joint tenants" of the land described; that Joseph H. Howell and Fiducia F. Howell "together have an undivided one-half interest therein; that the defendant Amy N. Howell has an undivided one-fourth interest therein; that the defendant Guy N. Howell has an undivided one-twelfth interest therein; that the defendant Katie Howell has an undivided one-twelfth interest therein; that the defendant Grace Howell, a minor, has an undivided one-twelfth interest therein." Grace Howell was a minor of the age of about 13 years, and her mother, Amy N. Howell, was, upon the

application of the attorney who represented all the parties, appointed guardian *ad litem*. All the defendants in the partition suit signed and on September 4, 1908, filed, an answer which recited:

"That the respective interests or portions of the real property described in the complaint herein are correct, and we would ask the court to order a partition of the property in accordance with the complaint herein."

The court appointed referees who divided the land by allotting the 15.61-acre tract to J. H. Howell and F. F. Howell, 11 acres to Amy N. Howell, and 3 acres to each of her three children. The report of the referees was confirmed and a final decree entered on November 21, 1908. Joseph H. Howell left no writing concerning the disposition of his property except an instrument, dated August 24, 1908, which had been prepared and signed by him, was witnessed, and reads thus:

"Know all men by these presents that I, J. H. Howell, being of sound mind, do give and bequeath all of my real and personal property to my wife Fiducia F. Howell to have and hold for her use as she may think best to sell or dispose of as she wishes."

The grandchildren commenced this suit against their mother and grandmother for the purpose of annulling the decree in partition. The complaint in the instant case charges that Joseph H. Howell employed one attorney who acted for all the parties, that the minor was wronged by the appointment of her mother as guardian *ad litem,* and that the partition suit was tainted with fraud.

After denying the alleged fraud, defendant Fiducia F. Howell claims that a trust resulted in her favor because she furnished $600 of the money used to pur-

chase the Mohney tract and supplied $550 of the $2,000 paid for the 20 acres purchased from Thomas and Watt. The grandmother also relies upon an estoppel arising out of the alleged acquiescence of the plaintiffs in the partition proceedings, coupled with the fact that she built a house upon the 15.61-acre tract partitioned to her. Amy N. Howell defaulted. The trial court decreed that Fiducia F. Howell was the owner in fee simple of all the 15.61 acres allotted to her in the partition suit. The plaintiffs and the defendant Amy N. Howell appealed.          MODIFIED.

For appellant-defendant, Amy N. Howell, there was a brief and an oral argument by *Mr. Isaac H. Van Winkle.*

For appellants-plaintiffs, Grace Howell, Katie Howell Uhrig and Guy N. Howell, there was an oral argument together with a brief on the essential requisite to establish a resulting trust, by *Mr. Claire M. Inman,* to this effect:

It is indispensable to the establishment of a resulting trust that payment of the purchase price *should actually be made by the person asserting the trust,* or a binding obligation therefor incurred by him, *as a part of the original transaction* at or before the time of conveyance. Payment at some subsequent time is not sufficient: *De Roboam* v. *Schmidtlin,* 50 Or. 388, 393 (92 Pac. 388); *Sisemore* v. *Pelton,* 17 Or. 546, 554 (21 Pac. 667).

As the trust results from the payment of the consideration, if the party claiming to be the beneficial owner has made no payments, *he cannot show by parol evidence that the purchase was made for his benefit,* for that might involve no more than a breach of a parol contract to purchase and hold in trust for him.

This would be to overturn the statute of frauds: *Taylor* v. *Miles,* 19 Or. 553 (25 Pac. 143); *Dudley* v. *Bachelder,* 53 Me. 408, 409.

Equity courts are stringent in the requirement of unquestionable evidence to establish a resulting trust, and "it is settled by a complete unanimity of decisions that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of payment by the alleged beneficiary beyond a doubt": *Sisemore* v. *Pelton,* 17 Or. 553, 554 (21 Pac. 667).

If the party claiming the benefit of the trust gives or loans money or property to the purchaser who pays the purchase price on his own account, this does not raise a resulting trust in favor of the party advancing the money, for the payment is in such case made by the purchaser with his own funds. The consideration of the purchase must belong to the alleged *cestui que trust,* and if he advances it to the party making the purchase as a loan or gift, there can be no resulting trust in his favor. The payment by the alleged *cestui que trust* must be made by him in the character of a purchaser as a part of the original transaction: *Dudley* v. *Bachelder,* 53 Me. 406–409; *Williamson* v. *Roberts,* 70 Or. 126 (140 Pac. 633).

For respondent, Fiducia F. Howell, there was a brief and an oral argument by *Mr. George G. Bingham.*

MR. JUSTICE HARRIS delivered the opinion of the court.

If the theory of the plaintiffs is correct, Joseph H. Howell and his son John M. Howell were tenants in common, owning equal interests in two tracts of land which aggregated 35 acres; upon the death of John

M. Howell his undivided one half, by operation of law, descended to his three children subject to the dower interest possessed by Amy N. Howell; the writing, which Joseph H. Howell prepared and no doubt believed would serve as his will, did not provide for or mention John M. Howell or his children, and was therefore not binding upon the plaintiffs (Sections 7325 and 7348, L. O. L.) ; and if the decree rendered in the partition suit is annulled, the grandchildren become the owners as tenants in common of the 35 acres, subject only to the unadmeasured dower interests of Amy N. Howell and Fiducia F. Howell. The grandmother combats the contention made by plaintiffs and in part rests her asserted rights upon the claim that she furnished money with which to buy the land in dispute; she affirms that the partition suit was free from fraud and therefore effective; and she insists that her title is impervious to attack because the plaintiffs acquiesced in and apparently were satisfied with the division of the land and without protest permitted her to expend money in the construction of a house when they knew that she believed the structure was being erected on her own land.

1. Joseph H. Howell and his wife came to this state shortly after the Civil War and lived in Salem about ten years, during two years of which period the husband was sick or unable to secure employment. In 1867 Solomon Durbin and wife conveyed a lot in Salem to Joseph H. Howell for $2,000, of which $1,000 was paid at the time and the remainder was furnished by Fiducia F. Howell from the profits in a millinery business which she was conducting. After living in Salem about ten years, they removed to a farm for which they paid a considerable sum and which for conven-

ience will be called the Santiam farm. They had attempted to purchase the Santiam farm, which is a portion of the wife's part of the Valentine donation land claim, but afterward discovered that the title had never passed from the federal government. The Durbin lot which had been purchased in 1867 was sold for $2,000, and this money, together with about $500 which Fiducia F. Howell supplied, was lost by paying it on the attempted purchase of the Santiam farm. Upon ascertaining that title to the Valentine donation land claim had failed, Joseph H. Howell entered upon 160 acres of the premises as a homestead and obtained a patent on April 10, 1882. One Downer pre-empted a part of the land but afterward surrendered possession before perfecting his right to a conveyance, and thereupon John M. Howell was sent for by his parents, and he made a homestead entry upon the portion surrendered by Downer and received a patent on April 10, 1889. John M. Howell and his parents resided on the Santiam farm until about 1888, when they removed to Salem. They had not prospered and were indebted to the Williams & England Bank. Fiducia F. Howell obtained employment for about ten months at the Indian School, and then she served meals for twelve years in the State House, where J. H. Howell was head janitor. Her husband was receiving $75 per month, and the business of serving meals gradually increased until the wife made as much as $100 per month; but during the first two years at the State House her earnings went into the common purse. The Mohney tract, consisting of 15.61 acres, was conveyed to J. H. Howell and his son by a deed dated March 14, 1890, for the sum of $1,560. W. D. Mohney testified that he made the bargain with John M. Howell; that the price was

77 Or.—35

$100 per acre; that $100 was paid down and a 30-day note was given for the balance; that John said that he and his father were buying the land together, and he could get the balance of the money in thirty days; that upon the expiration of the 30 days the note was taken up and the deed delivered. On March 12, 1890, J. H. Howell and wife and J. M. Howell and wife borrowed $1,500 from the board of commissioners for the sale of school and university lands and gave a mortgage on the Santiam farm to secure the note. The evidence persistently points to the conclusion that the money was borrowed for the purpose of paying Mohney. A part of the Santiam farm was sold to L. Hobson on August 21, 1893. The mortgage was canceled on the same day, and, according to the testimony of L. Hobson, the encumbrance was satisfied out of the moneys he paid to the Howells.

It is not necessary to ascertain how much money Fiducia F. Howell furnished for the Thomas and Watt 20-acre tract. She does not claim any interest in that property, nor is she in a position to do so, because the partition suit cut off all her rights to any part of the 20 acres which were allotted to the grandchildren and their mother.

The partition suit did in fact accord recognition to the contributions made by Fiducia F. Howell by awarding her an equal interest with Joseph H. Howell in the Mohney or 15.61-acre tract. It clearly appears that Joseph H. Howell and his son borrowed the funds which were used to purchase the Mohney tract; they gave a mortgage on the Santiam farm to secure the loan; they satisfied the mortgage from proceeds of the sale of the Santiam farm; and consequently the Mohney tract was purchased with their money. It is

true that Fiducia F. Howell paid $2,500 of her money on the attempted purchase of the Santiam farm, but no title or interest was gained by the payment because the title had not passed from the government. Her money was lost. When title did finally pass, it went to Joseph H. Howell and to J. M. Howell by virtue of the homestead entries made by them. Fiducia F. Howell had confidence in her husband and son, and each had unbounded faith in the other; they worked in harmony and formed a happy partnership; it is quite likely that the strongest hand at the helm was that of the grandmother, and it is probable that her energy and industry contributed most to the common savings; but, the evidence fails to supply the essentials of a resulting trust: *Sisemore* v. *Pelton,* 17 Or. 554 (21 Pac. 667); *De Roboam* v. *Schmidtlin,* 50 Or. 393 (92 Pac. 1082); *Williamson* v. *Roberts,* 70 Or. 126 (138 Pac. 840, 140 Pac. 633); *Chance* v. *Graham,* 76 Or. 199 (148 Pac. 65). It must be remembered, too, that the grandmother is vouching for the fairness of the decree in the partition suit, because she is claiming under a decree which awarded the Mohney tract, not to her alone, but to her and Joseph H. Howell.

2. Plaintiffs contend that paragraphs 11 and 12 of their complaint are impliedly admitted because not denied by the answer, and that therefore these admissions will support an adjudication impeaching the decree in partition. The failure specifically to deny paragraphs 11 and 12 was the result of inadvertence. These two paragraphs in substance alleged that the complaint filed in the partition suit did not truthfully state the interests of the grandchildren nor correctly relate the rights of the mother and grandmother. The paragraphs mentioned also averred that the grand-

parents represented that the attorney employed was competent and would correctly advise all the parties to the suit and that it would not be necessary to secure any other attorney; and that the representations were for the purpose of preventing the grandchildren and their mother from employing a competent attorney to represent them and make a defense to the complaint.

The allegations of fraud found in paragraphs 11 and 12 appear many times throughout the complaint and particularly in paragraphs 10, 13, 14 and 15. Every allegation of fraud in the complaint is especially denied, except the two paragraphs numbered 11 and 12, and the denials are supplemented by a separate defense which affirms that the partition suit was free from fraud. While the answer fails to deny paragraphs 11 and 12, it did traverse the substance of those two paragraphs as found elsewhere in the complaint. It is true that the answer was assailed by a motion and also by a demurrer; but at no time, until after the appeal, was attention called to the failure to deny paragraphs 11 and 12. Evidence was offered by all the parties concerning the allegations of fraud, and the trial proceeded on the theory that the integrity of the partition suit was in issue. It must be borne in mind that:

"Procedure is not the end for which law was instituted, but the means by which justice may be administered in an orderly manner": *Williams* v. *Pacific Surety Co.,* 66 Or. 151, 156 (127 Pac. 145, 131 Pac. 1021, 132 Pac. 959, 133 Pac. 1186).

Since the plaintiffs are relying upon a technical defect, they must comply with the requirements of strict technical rules: *Jackson* v. *Sumpter Valley Ry. Co.,* 50 Or. 455 (93 Pac. 356). It is plain that the defendant

intended to deny every allegation of fraud, and she did deny the charge as it appeared in every paragraph of the complaint except 11 and 12. The plaintiffs did not direct the attention of the trial court to the exact state of the pleadings, but the question of fraud was tried and determined as though in issue, and consequently the plaintiffs have forfeited their right to take advantage of the inadvertence of Fiducia F. Howell: *Minard* v. *McBee,* 29 Or. 225 (44 Pac. 491); *Missoula Mercantile Co.* v. *O'Donnell,* 24 Mont. 65 (60 Pac. 594, 991); *Williams* v. *Hayes,* 20 N. Y. 58.

3, 4. The partition suit was not vitiated by fraud. While there is some evidence to the effect that Amy N. Howell signed the answer with some reluctance, and that the grandfather threatened to dispose of his property so that Guy N. Howell would not receive any of it if the latter did not sign the pleading, still the one fact that stands out with all the certainty and fixedness of the pole star is that the three grandchildren and their mother were thoroughly satisfied with the division of the property made in the partition suit, until it was ascertained that Joseph H. Howell had attempted to will all his property to Fiducia F. Howell. Guy N. Howell testified that his grandfather never deliberately misled him; and furthermore he admitted on cross-examination that the whole trouble had grown up with reference to the 15.61 acres after the death of the grandfather and after it was known that Joseph H. Howell had attempted to devise the land to Fiducia F. Howell. Joseph H. Howell claimed an undivided one-half interest in the two pieces of land aggregating 35 acres, and he told Amy N. Howell as well as others that the grandchildren and their mother owned an undivided one half in both tracts. Two days

before his death John M. Howell urged his mother to have the land divided. The desirability of having the land partitioned was discussed and determined upon by the members of the family before the commencement of the partition suit. The improvements were on the 15.61 tract, but the additional five acres allotted to Amy N. Howell and her children offset the value of the improvements. No one was deceived. Every step was taken in the open, and it was a family settlement with which every interested party was satisfied until a short time before the commencement of the instant suit. It is true that one attorney represented all the parties, but under the circumstances the decree, so far as it concerns Fiducia F. Howell, cannot be lightly regarded and will not be disturbed, where the evidence affirmatively shows that it was essentially a family settlement and all parties concerned wished to act honestly and fairly: *French* v. *Goin,* 75 Or. 255 (146 Pac. 91); *Loughary* v. *Simpson,* 75 Or. 219 (145 Pac. 1059).

5. Amy N. Howell had an interest in the subject matter of the partition suit, and the appointment of some other person as guardian *ad litem* might have been better; the mother, however, acted in the capacity of guardian *ad litem* with the permission and approval of the judge, and the results ought not to be less binding unless there was fraud or collusion: *Ivey* v. *McKinnon,* 84 N. C. 651. Here there was neither collusion nor fraud, although there was an honest mistake as to the extent of the interest held by Amy N. Howell. As between the grandparents and the minor, there was not even a mistake as to the interest owned by Joseph H. Howell, because it is conceded that an undivided one half of the entire property was owned by him. Where the court has complete jurisdiction of the sub-

ject and of the parties, a decree rendered against an infant defendant is as valid and effectual as if taken against an adult, provided there is no evidence of fraud or collusion: *English* v. *Savage,* 5 Or. 518; *Savage* v. *McCorkle,* 17 Or. 42 (21 Pac. 444); *Harding* v. *Harding,* 46 Or. 178 (80 Pac. 97).

6. The defendant Amy N. Howell admits that she only possessed an unadmeasured dower estate in the premises, and that she does not rightfully own a fee-simple interest in the 20 acres. It was the design of the partition suit to allot to the grandparents their proper share severed from any claim of Amy N. Howell and her children. The decree in partition will not be disturbed so far as it relates to the 15.61 acres or Mohney tract awarded to Joseph H. Howell and Fiducia F. Howell; but, since Amy N. Howell admits that the interest of John M. Howell descended to the three children subject to her dower interest, and concedes that the quantities allotted to her and her children at least resulted from error, the admitted mistake appearing in the partition decree is corrected, and the plaintiffs are adjudged to be the owners in fee simple of the 20 acres subject to the dower interest owned by their mother.

7. Fiducia F. Howell owns the undivided one half of the 15.61-acre tract and has a dower interest in the remaining undivided half. A new house costing between $1,050 and $1,750 was built upon the Mohney tract while the partition suit was pending. The grandmother contends that her money paid for the building. The plaintiffs contend that the funds used belonged to the joint account of the grandfather and his son. It is significant that the house was being constructed upon land which it was expected would ultimately be owned

by Fiducia F. Howell and her husband, and it is a noteworthy fact that W. H. Dalrymple, who built the house under a verbal agreement, testified that "my contract with her (meaning Fiducia F. Howell) was $1,050." The preponderance of the evidence points to the conclusion that Fiducia F. Howell furnished the money for the construction of the building referred to in the record as the new house. Fiducia F. Howell, who is now about 79 years of age, and has been blind since 1906, is entitled to reap the fruits of the partition suit by using or selling or otherwise disposing of her interest without any further delay. The decree on this appeal is final, and it will not be necessary to prosecute the suit which she instituted to enforce the decree in partition.

The decree of the trial court is modified, without judgment for costs or disbursements in the court.

MODIFIED.

MR. JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.