Argued July 7, affirmed October 27, petition for rehearing
denied November 28, 1972

WILLIAMS, *Appellant, v.* BRIGGS ET AL,
*Respondents.*
502 P2d 245

*Jack A. Gardner,* Eugene, argued the cause for appellant.

*William Frye,* Eugene, argued the cause for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is a suit to quiet title, brought by the record owner of real property in Lane county against persons in the record chain of title, including Sandra Briggs, a minor, whose parents had her name included in the deed when they purchased the property which was later sold to plaintiff's grantor.

Although the parents disclaim any interest in the property for themselves, the mother of the minor, as her subsequently appointed guardian, seeks by counter-suit to assert her daughter's claim to an undivided one-half interest in the property and to cancel the deed by which her daughter joined in the sale of the property, insofar as that deed relates to her.

Plaintiff, in reply, contends that Sandra Briggs is barred from making such a claim because of an election of remedies made by her mother, as her guardian, in a previous lawsuit involving the same property and because of estoppel and ratification arising from that same conduct. Plaintiff also contends that there was an equitable conversion of Sandra's interest in the property into personal property and that plaintiff was a bona fide purchaser of such property.

The trial court denied the affirmative relief sought by both parties, but found that Sandra Briggs is a minor and has "an interest" in the property, and that she retains the right to either affirm or disaffirm the deed conveying the property to plaintiff's vendor. Both plaintiff's complaint and defendants' countersuit were dismissed. Plaintiff appeals from that decree. We affirm.

This is a most unfortunate case in which the interest of purchasers of real property to reasonable

certainty in real property transactions conflicts with the interest of minors who have an interest in real property to the proper protection of such interests. In the consideration of this case it is necessary to consider the interest of Sandra Briggs as a minor, and as completely distinct from the interest and conduct of her parents, who were largely responsible for the problems presented for decision in this case.

On September 27, 1966, Sandra's parents, Mr. and Mrs. Briggs, entered into a transaction involving an exchange of real property with Jack S. Morgan and wife. The Briggses, in turn, entered into a contract to sell to one Richards the property acquired by them from the Morgans. At the request of Mr. and Mrs. Briggs, the name of their daughter, Sandra, was included as one of the grantees in the deed from the Morgans as "a single person," and was also included as such as one of the vendors in the contract of sale to Richards.

On March 14, 1967, Mr. and Mrs. Briggs (but not Sandra) entered into a new land sale contract with Richards to "supplement and supersede" the previous contract, to which Sandra was a named vendor. On the same date Mr. and Mrs. Briggs and Sandra, as "a single person," all executed a warranty deed back to the Morgans for a 22-acre portion of the tract originally owned by the Morgans, apparently for the price of $12,000.

One week later, on March 21, 1967, Sandra, as "a single person," executed a bargain and sale deed conveying the entire original tract to her parents. The record does not show the disposition of the $12,000, insofar as Sandra is concerned. Up to this point no guardian had been appointed for her.

Meanwhile, on March 18, 1968, the Morgans executed a "special warranty deed" conveying 10 of these 22 acres to plaintiffs, with a warranty limited to "incumbrances created or suffered thereon by grantor" and against the claims of "persons claiming by, through, or under the grantor."

On October 31, 1968, Mrs. Briggs was appointed as a general guardian for her daughter Sandra, stating that "[t]his guardianship is necessary in order to permit the sale, with clear title, of the above described real property," referring to a description of the entire original 117-acre tract, as also described in the "Inventory and Petition for License to Sell Real Property," as well as in the "License to Sell Real Property," as issued by the court on November 20, 1968.

Over one year later, on January 12, 1970, Mrs. Briggs, as guardian for Sandra, submitted to the court for approval an accounting from which it appeared that on December 24, 1968, the original tract, *excepting* the 22-acre portion previously sold to the Morgans, had been sold "as evidenced by" a return of sale and order confirming sale (copies of which do not appear in this record), and that "[t]he ward's interest was sold for $15,000 cash." At the time of that hearing the court permitted the filing of an Amended Accounting with reference to the distribution of these proceeds, Although such an Amended Accounting was filed, the record of this case does not show whether it was ever approved by the court.

Meanwhile, on March 13, 1969, Mr. and Mrs. Briggs and Sandra, by her mother as her guardian ad litem (also being her general guardian at that time), filed an action at law against both the Morgans and Richards, alleging that at the time of the deed to the

22-acre tract from the Briggses to the Morgans on March 14, 1968, defendant Richards was acting "as agent for and in concert with" the Morgans and that defendants made fraudulent representations to the Briggses as a result of which they were induced to sell for $12,000 a parcel of land worth $50,000, and claiming $38,000 in actual damages and $10,000 in punitive damages. That action resulted in a verdict and judgment of $35,000 general and $10,000 punitive damages against Richards, who had filed an answer, but did not appear on trial. However, an Order of Involuntary Nonsuit was entered in favor of the Morgans. The Briggses then appealed to this court, which affirmed that order, on the ground that there was insufficient evidence of an agency relationship between Richards and the Morgans. *Briggs v. Morgan,* 262 Or 17, 496 P2d 17 (1972).

While that action was still pending and on May 22, 1969, plaintiff Williams filed this suit to quiet title to the same tract, as purchased by them from the Morgans. The contentions of the parties in this case, as well as its disposition by the trial court, have already been stated.

On the trial of this case, and in addition to the foregoing facts, plaintiff offered evidence that at the time of the original property exchange between the Morgans and the Briggses it was not known by the Morgans that Sandra was a minor and that plaintiff first learned of Sandra from their attorney six or eight months after purchasing the ten-acre tract from the Morgans when he tried to clear the title to that tract. It also appears that on October 4, 1968 (some seven months after the date of the deed from the Morgans to plaintiff on March 18, 1968), a title company

issued a report listing as an "exception" the "interest of Sandra" as disclosed by the fact that, according to court records, she was a minor child. Although the title company had previously issued a title policy to the Morgans, it apparently issued no title policy to plaintiff.

Plaintiff's first assignment of error is that the trial court erred in failing to find that Sandra was barred from claiming any interest in the property by the doctrine of election of remedies "arising by virtue of her participation, through her general guardian and guardian ad litem," in the action for fraud against the Morgans and Richards. Thus, plaintiff contends that if Mr. and Mrs. Briggs and Sandra were defrauded they could elect whether to affirm the contract and sue for damages for fraud or to disaffirm the contract and sue to rescind it.

■ In this case, however, we do not reach that question because we are of the opinion that where the interests of a minor in real property are involved, as in this case, neither a guardian ad litem nor a general guardian may waive the right of the minor to decide, upon becoming of age, whether to affirm or disaffirm such an interest, unless expressly authorized by a court to do so. See 6 Thompson, Real Property 32, 33, 35, § 2947 (1962); 1 Powell, Real Property 482, § 126 (1969). See also Schneider, Litigation Involving Minors and Incompetents, U Ill L Forum 245, 247 (1951).①

---

① Similarly, generally a guardian cannot, without court approval, make a binding election for an infant as to his right to take under or against the provisions of a will. Nashville Trust Co. v. Winters, 23 Tenn App 262, 130 SW2d 152, 156 (1939); Wooten's Trustee v. Hardy, 221 Ky 338, 298 SW 963, 966 (1927); Moorman v. Louisville Trust Co., 181 Ky 566, 205 SW 564, 565 (1918); Annot., 21 ALR3d 320, 357 (1968).

■ This being true, it follows, *a fortiori,* that neither a general guardian nor a guardian ad litem of a minor may unintentionally destroy the interest of the minor in real property by the making of a binding election of remedies, so as to bar the minor from later pursuing an inconsistent remedy, at least in the absence of court authorization to do so.

The reasons for this result are stated in *Dixon v. United States,* 197 F Supp 798 at 803 (WD SC 1961), as follows (although under different facts):

> "At common law infants do not possess the power to exercise the same legal rights as adults. The disabilities of infants are really privileges, which the law gives them, and which they may exercise for their own benefit, the object of the law being to secure infants from damaging themselves or their property by their own improvident acts or prevent them from being imposed on by others. The rights of infants must be protected by the court, while adults must protect their own rights. Persons dealing with infants must take notice of their privileges and disabilities. Infancy is a shield for the protection of an infant. 43 C.J.S. Infants § 19, pp. 81, 82; Beam v. McBrayer et al, 132 S.C. 72, 128 S.E. 34.

> "* * * * *

> " 'The guardian ad litem or next friend can make no concessions. He cannot waive or admit away any substantial rights of the infant, or consent to anything which may be prejudicial to him, even by neglect or omission; and any admission or waiver is ineffectual and not binding upon the infant, although contained in a pleading.' 31 Corpus Juris, p. 1143, See, also, 43 C.J.S. Infants § 111d."

As also stated in *Hodges v. Hale,* 20 Tenn App 233, 97 SW2d 454 (1936), at 458, in rejecting a some-

what similar contention of an election of remedies by the guardian of a minor:

"* * * Where the pleadings raise directly the question adjudicated, the court is thereby apprised of the fact that it is passing upon the rights of the minor and may extend a measure of protection to the rights of the minor as the ward of the court. But we do not think the same may be said of matters only incidentally involved. As to all such matters it is fair to hold that adult parties capable of acting for themselves are concluded, but it is too much to assume that the court in every case where minors are involved must search for issues incidentally raised which may in some manner affect the rights of the infant parties. * * *"

Plaintiff states that the legal authorities on the question of election of remedies by the guardian of a minor are "scant either way." This may be true. Some of the authorities cited by plaintiff, however, seem to support the foregoing proposition, rather than the position of the plaintiff.② The authority cited by plain-

② Thus, plaintiff quotes from 39 Am Jur 2d 87, Guardian and Ward § 102, as follows:

"And it has been held that *the court may authorize* the guardian of a minor to elect whether to take compensation for the death of his father under the Workmen's Compensation Act, or sue for the damages so as to bind the minor by election." (Emphasis added)

Similarly, plaintiff quotes from 39 CJS 110, Guardian and Ward § 68, as follows:

"Where the ward has an election between alternative rights or remedies, the guardian can exercise the necessary election on his behalf, *although he cannot bind the ward by an election which is prejudicial to the ward's interest.*" (Emphasis added)

5 Bancroft's Probate Practice (2d ed) 225, § 1362, also quoted by plaintiff is not to the contrary, since it does not purport to state a rule relating to the interests of minors in real property, but states only the general rule of guardianship law, that:

"Ordinarily, in the absence of fraud or collusion, the appear-

tiff most directly in point is *Vose v. Penny,* 78 Okla 238, 190 P 97 (1920), in which it was held, by a divided court (at p 98), that the guardian of a minor by taking judgment for the amount of a mortgage had elected his remedy and was thereafter estopped from questioning the validity of that mortgage. In our opinion, however, the views of the majority in that case are contrary to and inconsistent with the well established proposition previously referred to, as recognized by the dissenting opinion in that case (at pp 103-104) and which is also more consistent with the views of this court on election of remedies, as stated in *Johnson v. Dave's Auto Center, supra.* Moreover, in *Bynum v. Moore,* 101 Okla 128, 223 P 687 (1923), the Oklahoma court subsequently held (at p 689) that there was no binding election of remedies by the guardian of a minor so as to destroy the right of a minor, on becoming of age, to either affirm or disaffirm a claim of interest in real property and distinguished *Vose v. Penny, supra,* on its facts.

This court has held that generally, absent fraud or collusion, a judgment against a minor is as valid and effectual as if taken against an adult. *Howell v. Howell,* 77 Or 539, 550-551, 152 P 217 (1915); *Harding v. Harding,* 46 Or 178, 180, 80 P 97 (1905). However, we have not previously had occasion to decide whether an election of remedies by the guardian of a minor, when made without court authorization, can have the

ance of a guardian is deemed to be the appearance of the ward, and the ward is bound as fully as though he were a competent person * * *."

Kromer v. Friday, 10 Wash 621, 39 P 229 (1895), also cited by plaintiff, while stating a similar rule relating to minors, did not apply such a rule to an election of remedies by a guardian and was decided by a divided court.

effect of affirming a deed purporting to convey the interest of a minor in real property, also made without court authority, thus destroying a previously existing interest of the minor in such property. In *English v. Savage,* 5 Or 518 (1875), it was stated (at p 522) that the guardian ad litem for a minor in that case had "full power to bind * * * defendant [minor] by admission, even to the confessions of a judgment." In that case, the guardian for a minor had sold real property and in a previous suit by the purchaser to quiet title the guardian admitted the allegations of the complaint. The court, in entering that decree, approved those admissions on behalf of the minor. Thus, it was proper to dismiss the complaint in a subsequent suit to set aside that decree and sale.

In *Schramm v. U.S. Nat. Bank of Portland,* 151 Or 693, 52 P2d 181 (1935), this court, under somewhat different facts, approved and applied (at p 704) the general rule that a court is not bound by the admission of the guardian of a minor relating to the interest of a minor in property, but will make its own inquiry to determine whether such an admission is in the best interests of the minor before entering a decree in such a case. To the same effect, see *Savage v. McCorkle,* 17 Or 42, 21 P 444 (1888).

In our view, these previous decisions are consistent with our holding in this case that when Sandra's mother, as her guardian ad litem (and as her general guardian) joined with Sandra's parents in the previous action at law for damages for fraud against Morgan and Richards, and when a judgment was entered against Richards and an involuntary nonsuit in favor of Morgan, there was no binding election of remedies insofar as Sandra, as a minor, was concerned so as to

bar her right, upon becoming of age, to decide for herself whether to affirm or disaffirm the previous sale of that property to Morgan.

It is true that the entire common law concept that the contracts of a minor are voidable has been subject to criticism. See, for example, Edge, Voidability of Minor's Contracts: A Feudal Doctrine in a Modern Economy, 1 Ga L Rev 205 (1967). It may also be true that, under some circumstances, a minor may be estopped by his own conduct from seeking to avoid a previous transaction. See dissenting opinion by O'Connell, J., in *Olshen v. Kaufman,* 235 Or 423, 444, 385 P2d 161 (1963), and Annot., 29 ALR3d 1270 (1970). In this case, however, no conduct by Sandra is relied upon as the basis for the claim of estoppel, but rather the conduct of her mother as guardian in the previous litigation.

■ Plaintiff also assigns as error the failure of the trial court to find that Sandra was estopped by the same conduct of her guardian and that through such conduct by her guardian she had ratified the 1967 deeds, as executed by her as "a single person," but without guardianship proceedings. For the same reasons that Sandra was not barred by the conduct of her guardian as an election of remedies, it follows that neither was she barred by the same conduct as an estoppel or as a ratification by her of such conduct.

■ Plaintiff's final assignment of error is that the trial court erred in failing to find that plaintiff was a bona fide purchaser of the property upon the ground that by the contract for the sale of the real property to Richards there was an equitable conversion of Sandra's interest in such property into personal property. For the same reasons that the conduct of Sandra's

mother, as her guardian, was not binding upon Sandra as an election of remedies, in the absence of court authorization, it also follows that the conduct of Sandra and her parents in entering into a contract for sale of the property to Richards was also not binding upon her, in the absence of court authorization. Thus, such conduct did not result in an equitable conversion into personal property of her interest in the land, so as to make applicable the rules of law relating to bona fide purchasers of personal property.

As previously stated, this is a most unfortunate case. For all of these reasons, however, we are of the opinion that the trial court did not err in dismissing plaintiff's complaint on any of the grounds complained of by plaintiff's assignments of error on this appeal. Whether the court was also correct in dismissing the countersuit of Sandra's mother, as her guardian, we need not decide because no cross-appeal was filed by defendants.

Affirmed, without costs to either party.